Harold D. JOHNSON, M.D., Appellant,

v.

GREATER SOUTHEAST COMMUNITY
HOSPITAL CORPORATION, et al.,
Appellees.

No. 91–7002.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 23, 1991.
Decided Dec. 13, 1991.

Shelley D. Hayes, Washington, D.C., for appellant.

Arthur D. Burger, with whom Nicholas S. McConnell, Washington, D.C., was on the brief, for appellees.

Before MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Dr. Harold D. Johnson appeals the dismissal of his antitrust, civil rights and tort claims against Greater Southeast Community Hospital ("Greater Southeast" or "Hospital") of Washington, D.C. and certain individuals affiliated with the Hospital. Appellant alleges that appellees have engaged in a course of conduct designed to prevent him, for racially discriminatory and anticompetitive reasons, from providing obstetrical services to Medicaid recipients in Ward 8 of the District of Columbia. Finding that appellant's Medical Staff membership and privileges at the Hospital had not been terminated, the district court dismissed appellant's suit as unripe. We reverse the dismissal and remand for further proceedings to determine (1) if appellant's Medical Staff membership and privileges are, in fact, now terminated; and (2) if appellant's claims of injury apart from the termination of his Medical Staff membership and privileges are ripe for review.

Appellant also appeals from the district court's denial of his motion for summary judgment on his civil rights claims. Because a denial of a motion for summary judgment is not an appealable order, we decline to rule on that issue.

Finally, the district court sealed the entire record in this case, with the exception of appellant's complaint. Appellant has moved this court to unseal the record. We decline to do so at this time, but urge the district court to give serious consideration, on remand, to any renewed motion to unseal in light of this circuit's demanding standards governing the sealing of judicial records.

## I. BACKGROUND [1]

Dr. Harold D. Johnson, a board-certified physician specializing in obstetrics and gynecology, became a member of the Active Medical Staff of the Hospital in 1981. From 1981 until 1988 he applied for, and was granted, reappointment to the Active Medical Staff without limitation. In January, 1989, however, the Chairman of the Hospital's Department of Obstetrics and Gynecology reported to the Medical Staff Executive Committee ("MSEC") that he had become aware of quality of care issues concerning Dr. Johnson. The MSEC established a six-member *ad hoc* committee to investigate; three of the members of that committee are named as defendants in Dr. Johnson's suit.

In July, 1989, while the MSEC's investigation was ongoing, Greater Southeast entered into an exclusive contract with the Johns Hopkins Health Plan, a health maintenance organization, to provide in-patient services to the Plan's Washington, D.C. subscribers. At the same time, United Health Services, a preferred provider organization composed of certain members of Greater Southeast's Medical Staff, entered into an exclusive contract with the Johns Hopkins Health Plan to provide physician services to the Plan's District subscribers. Appellant's 1989 applications for membership in the Johns Hopkins Plan and United Health Services were both denied. Three of the physician defendants in this suit are members of both the Johns Hopkins Plan and United Health Services.

The MSEC finished its investigation on August 14, 1989, concluding that appellant should be subjected to "a severe reprimand, focused review, concurrent monitoring and supervision of surgical cases for a minimum of 24 months." *Johnson v. Greater Southeast Community Hosp.*

---

1. On October 2, 1991, we ordered appellees to designate the specific portions of the record that they contend should remain under seal. They responded with an exhaustive list on October 8, 1991, the disposition of which would take longer to decide than the merits of the appeal. Accordingly, in our opinion we have tried in the main to avoid specific references to items on the list without in any way suggesting that they are entitled to remain under seal. We leave for the district court the inquiry as to the merits of appellees' contentions for confidentiality of particular items.

*Corp.*, No. 90–1992, Memorandum Opinion ("Mem. op.") at 4 (D.D.C. Dec. 12, 1990). Three days later, the Medical Staff President, also a defendant in this case, informed appellant that the MSEC's recommendation would be reviewed by the Hospital's Board of Directors, but that in the meantime appellant would be placed on summary suspension and must turn over care of his patients to other physicians immediately. An informal hearing before the MSEC on the suspension was scheduled for August 21, 1989.

At the hearing, appellant was asked whether he would be willing to accept the MSEC's recommendation for close monitoring and supervision. Appellant indicated that he would, and on August 23 he signed an agreement outlining the terms of the monitoring and supervision program, at which time the summary suspension was rescinded. After further review and approval of the MSEC's actions by both the Board of Directors and the Board's Quality Assurance Committee, the Board of Directors convened for a final decision on appellant's case on October 19 and 23, 1989.

At some time before those meetings, appellant submitted his application for reappointment to the Active Medical Staff for the 1990–1991 cycle.[2] The Hospital has to date taken no action on his reappointment.

At its October meetings, the Board considered two possible actions regarding Dr. Johnson: retaining him on the Medical Staff subject to the 24–month monitoring and supervision program or terminating his Medical Staff membership and privileges altogether.[3] The Board decided upon the latter course, permitting Dr. Johnson, however, to continue practicing at the Hospital under the monitoring and supervision agreement while he pursued any hearing or appeal rights under the Hospital's bylaws. On October 24, 1989, the President of the Hospital informed appellant by letter of the Board's decision to terminate him and that

he had forty-five days in which to request a formal hearing, after which the Board's decision would become final and his Medical Staff membership and privileges would automatically terminate. He also conveyed the Board's determination that

[p]ending your decision concerning a formal hearing, and during any hearing proceedings, your Medical Staff membership and privileges may continue under the monitoring agreement you signed on August 23, 1989.

*Id.* at 6.

Appellant duly requested a hearing, a Hearing Officer was appointed, and hearings were conducted on February 15 and 16, 1990. On March 21, 1990, one day before hearings were scheduled to resume, appellant filed a breach of contract action in the Superior Court of the District of Columbia alleging that the Hearing Officer's decision to permit the Hospital to call an independent expert witness violated the Hospital's bylaws. The court denied appellant's claim for immediate injunctive relief and the hearings continued, as scheduled, on March 22, 1990.

The final day of hearings was scheduled for April 5, 1990. On April 4, the Hearing Officer notified the parties that he would not proceed until appellant's Superior Court suit was resolved. Thereafter, on April 18, appellant served each member of the Board of Directors with a "post-hearing" brief requesting that the Board reconsider its decision to terminate his Medical Staff membership and privileges. The Board voted to wait until completion of the hearings and receipt of a report from the Hearing Officer before making any final decision regarding Dr. Johnson's status at the Hospital.

On May 8, 1990, appellant's Superior Court suit was dismissed as unripe. The Hearing Officer nonetheless refused to proceed unless the parties stipulated that the proceedings were covered by the immunity

---

**2.** The record indicates only that the application was submitted in September, 1989.

**3.** Appellee Edward J. Hinman, M.D., M.P.H., was a principal advocate for termination of

appellant's membership and privileges at Greater Southeast; appellant has alleged that Dr. Hinman caused the Hospital to terminate its contract with him.

provisions of the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11111 (1988). The Hospital agreed to so stipulate, but appellant would not; the Hearing Officer resigned effective August 2, 1990.

While the hearings were in recess, but before the Hearing Officer's formal resignation, appellant applied for reappointment to the Courtesy Staff of Columbia Hospital for Women Medical Center in Washington, D.C. In order to evaluate appellant's application, Columbia Hospital requested that Greater Southeast forward to it copies of the patient histories that had been the subject of Greater Southeast's investigation of Dr. Johnson. The record is not clear as to what happened following this request. Appellant alleges, however, that the Hospital did not promptly comply with this request, causing Columbia Hospital to temporarily suspend his privileges at that facility. The district court made no findings on this aspect of the case, but it does appear that Dr. Johnson eventually received reappointment to the Columbia Hospital Staff.

On August 10, 1990, counsel for the Hospital wrote to appellant's counsel inquiring how appellant wished to proceed in light of the Hearing Officer's resignation. Appellees' counsel proposed that the matter be submitted to the Board on the hearing record developed as of that date. Appellant did not respond to this offer; instead, he filed this suit on August 17, 1990.

Appellant alleges that the Hospital and named defendants [4] have conspired to boycott him from maintaining Medical Staff membership and privileges at Greater Southeast and to restrain trade and commerce in in-patient obstetrical services—all in violation of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 (1988), and the comparable provisions of the District of Columbia Code.[5] In furtherance of this conspiracy, appellant alleges, inter alia,[6] that appellees have caused the termination of his Medical Staff membership and privileges at Greater Southeast, precluded him from obtaining membership in the Johns Hopkins Medical Plan and United Health Services and interfered with his application for reappointment to the Medical Staff at Columbia Hospital for Women Medical Center.

Appellant, who is black, also alleges that appellees have failed to contract with him on racially-neutral grounds, in violation of 42 U.S.C. §§ 1981 and 1985, and unlawfully discriminated against him in the terms, conditions and privileges of his employment, in violation of Title VII of the Civil Rights Act of 1964 and § 1–2512 of the District of Columbia Code, by their refusal to grant him unrestricted Medical Staff membership and privileges and their failure to act on his application for reappointment to the Medical Staff.

Finally, appellant alleges that appellee Hinman tortiously induced a breach of contract between appellant and the Hospital through his advocacy of the termination of appellant's Medical Staff membership and privileges at Greater Southeast.

Appellees first moved that the district court seal the entire record in this action. By orders of September 24 and December 12, 1990, the court granted appellees' motion, sealing the entire record except for appellant's complaint. Subsequently, appellees moved for dismissal and/or summary judgment of all claims, arguing principally that Dr. Johnson's claims were not ripe for adjudication because termination proceedings had not been completed. Appellant in turn moved for summary judgment on his civil rights claims, arguing that appellees had failed to meet their burden of articulating a legitimate, nondiscriminatory

---

**4.** The Hearing Officer was originally named as a defendant in this suit. By order of December 11, 1990, the district court granted his motion to dismiss, finding that he was immune from suit pursuant to the Health Care Quality Improvement Act of 1986. *Johnson v. Greater Southeast Community Hosp. Corp.,* No. 90–1992, Memorandum Opinion (D.D.C. Dec. 11, 1990). The district court's order was summarily affirmed

by a panel of this court on April 5, 1991. *Johnson v. Greater Southeast Community Hosp. Corp.,* No. 91–7002 (D.C.Cir. Apr. 5, 1991) [946 F.2d 1565 (Table)]. (Order).

**5.** *See* D.C.Code Ann. §§ 28–4502, 28–4503 (1981).

**6.** *See infra* note 9.

reason for their actions against him. The district court granted appellees' motion to dismiss all claims, finding that "because the plaintiff's privileges and membership at the hospital remain intact, subject to the monitoring program agreed to by the plaintiff, the plaintiff has suffered no injury which is ripe for judicial consideration at this time under either antitrust law, civil rights law, or in tort." Mem. op. at 10. The court rejected appellant's argument that the terms of the monitoring and supervision agreement themselves constituted "injury" that was ripe for adjudication, finding that appellant entered into the monitoring agreement "voluntarily," that he had not demonstrated that the terms of the agreement harmed his practice, and that the agreement was not a "permanent or final action by the hospital," but might be rescinded upon completion of the termination proceedings. *Id.* at 9.

Dr. Johnson here appeals the dismissal of his suit and the denial of his motion for partial summary judgment on the civil rights claims. He also moves that this court unseal the entire record.

## II. ANALYSIS

### A. *Ripeness*

1. *Claims of Injury Related to Appellant's Medical Staff Membership and Privileges at Greater Southeast*

■■■ The district court dismissed appellant's antitrust, civil rights and tort claims on the grounds that his Medical Staff membership and privileges at the Hospital remain intact, subject to the monitoring and supervision agreement, and that therefore he has as yet suffered no "injury" that would make his claims ripe for adjudication. Even if the district court were literal-

ly correct that Dr. Johnson's privileges had not been terminated at the time of its ruling a year ago, assertions as to later developments made by counsel at argument of the appeal strongly suggest that that may no longer be the case.

Counsel for appellant stated that the monitoring and supervision agreement under which Dr. Johnson was practicing during the pendency of his appeals was effective for only two years and expired by its own terms on August 23, 1991. She stated that Dr. Johnson no longer enjoys any privileges at Greater Southeast Hospital. If that is so, then any ripeness obstacles to Dr. Johnson's claims based upon termination no longer exist. Although it is true that we normally review a district court's decision solely on the basis of the facts before it, *see, e.g., Goland v. CIA*, 607 F.2d 339, 370 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), it would make little sense in this case to affirm or reject a dismissal for lack of ripeness based on circumstances which may no longer exist. This is especially true when we are remanding other parts of the case based on the same factual scenario which are not dependent on the termination proceeding. *Cf. Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1243 (D.C.Cir.1991) (remanding for consideration of new evidence in light of "unusual circumstances" and the equities of the case). Accordingly, we are remanding to the district court for additional fact-finding on the key jurisdictional fact of whether appellant's Medical Staff membership and privileges at the Hospital have been terminated.[7] If they have, appellant's claims of injury stemming from his termination no longer suffer any ripeness defect and the court should go on to consider them on the merits.[8]

---

**7.** At oral argument, appellant renewed his assertion that his Medical Staff membership and privileges expired by operation of law when the Hospital failed to grant or deny his application for reappointment to the Medical Staff within the 120–day period prescribed by D.C.Code Ann. § 32–1307(f) (1981). Appellant made this argument to the district court in opposing appellees' Motion for Dismissal and/or Summary Judgment, but the district court did not address it in its memorandum opinion. On remand, the dis-

trict court should consider what effect, if any, this statutory provision has on appellant's Medical Staff membership and privileges at the Hospital.

**8.** In remanding for further fact-finding on the termination question, we are not suggesting that a party alleging violations of the antitrust laws necessarily must await elimination from the market before bringing a private cause of action under the Clayton Act. *See* Brief for Appellant

### 2. Claims of Injury Independent of Termination

Appellant alleged separate violations of law and resulting injuries apart from termination. On remand, the district court should determine whether in fact these claims are ripe for review, and, if so, proceed to adjudicate them on the merits. We enunciate several of these non-termination claims in the succeeding discussion.

### a. Appellant's Antitrust Claims

A number of appellant's antitrust claims may be ripe for judicial review. In order to make out a claim for damages under § 4 of the Clayton Act, a party must "be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15 (1988); see, e.g., Krempp v. Dobbs, 775 F.2d 1319, 1321 (5th Cir.1985) ("[t]o maintain an action for treble damages under 15 U.S.C. § 15, plaintiffs must allege and prove injury to their business or property proximately caused by a violation of the Sherman Act"); Park v. El Paso Bd. of Realtors, 764 F.2d 1053, 1068 (5th Cir. 1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) (proof of violation of Sherman Act standing alone does not establish civil liability for damages under § 4 of Clayton Act; there must be proof of injury to business or property); Association for Intercollegiate Athletics for Women v. National Collegiate Athletic Ass'n, 735 F.2d 577, 586 (D.C.Cir.1984) (assuming that particular practice violates § 2 of Sherman Act, plaintiff still has to prove that practice caused economic injury).

Appellant alleges that appellees have conspired to preclude his membership in the Johns Hopkins Health Plan and United Health Services. If proven, such a conspiracy is arguably "forbidden" by the antitrust laws. Moreover, it may have caused, and/or continues to cause, injury to appellant's practice.

Appellant also alleges that appellees interfered with his application for reappointment to the Courtesy Staff at the Columbia Hospital for Women Medical Center. Again, if indeed appellees combined and conspired to interfere with or delay appellant's reappointment to the Courtesy Staff at Columbia Hospital for anticompetitive reasons, this too would arguably run afoul of the antitrust laws. Any resulting suspension of appellant's membership and privileges at that facility could have caused economic injury to appellant's practice. Thus, these two claims, as well as several of appellant's other antitrust claims,[9] would appear to allege sufficient injury to qualify for damages under § 4 of the Clayton Act[10] without regard to whether or not

---

at 27–28; Reply Brief for Appellant at 8. We are merely saying that in order to make out a private cause of action for damages under § 4 of the Clayton Act, a party must allege injury to business or property resulting from a violation of the antitrust laws. See 15 U.S.C. § 15 (1988). A party "threatened" with injury that has yet to materialize does, however, have an injunctive remedy under the Clayton Act. See 15 U.S.C. § 26 (1988) (injunctive relief available when a party is "threatened [with] loss or damage by a violation of the antitrust laws"); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). Appellant, however, did not plead the "threat" of injury; he claimed that he had been terminated and was therefore entitled to treble damages under the antitrust laws.

9. Appellant also alleges antitrust injury stemming from: the Hospital's refusal to process his application for reappointment, his removal from the Hospital's Call Schedule, and appellees' defamatory remarks to others about his skills.

We of course reach no conclusion as to the merits of these or any of appellant's claims.

10. We find no error, however, in the district court's finding that appellant has failed to allege or demonstrate any economic harm to his practice stemming from the terms of the monitoring and supervision agreement. A demographics study submitted to the district court shows a drop in appellant's admissions to Greater Southeast, but does not support any inference that the reduction was the result of the monitoring and supervision agreement. In fact, Dr. Johnson testified before the Hearing Officer that the Hospital had assigned three physicians to monitor him "because of the number of patients that I was admitting to ... [the] ... hospital," Transcript of Medical Adjudication Hearing (Mar. 22, 1990) at 27, suggesting that appellant's practice was not suffering. Also, the President of the Hospital stated, by affidavit, that appellant had never advised him of a single instance in which he had sought to admit a patient to the Hospital and admission had been denied. Dec-

appellant was terminated from Greater Southeast.

■ Appellees argue, however, that even if appellant has suffered some form of "legally cognizable injury" from these alleged practices, prudential considerations warrant deferring their judicial consideration until the Hospital hearing process has been completed. Brief for Appellees at 23. Prudential considerations do on occasion justify courts in postponing review of an administrative agency's actions despite the presence of an Article III "case or controversy." Prudential aspects of the ripeness inquiry focus on whether there is an inherent lack of fitness for judicial review at this juncture and include " 'the agency's interest in crystallizing its policy before that policy is subject to judicial review, [t]he court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting, and the petitioner's interests in prompt consideration of allegedly unlawful agency action.' " *Natural Resources Defense Council, Inc. v. Thomas*, 845 F.2d 1088, 1093 (D.C.Cir.1988) (quoting *Better Government Ass'n v. Department of State*, 780 F.2d 86, 92 (D.C.Cir.1986)).

Even assuming that the same ripeness considerations apply outside of the agency context, they do not point towards a prudential deferral in this case. These allegedly illegal acts have already been completed. Appellees either conspired to exclude appellant from the Johns Hopkins Plan and United Health Services and to interfere with his reappointment to the Courtesy Staff at Columbia Hospital or they did not. He either suffered injury from such acts or he did not. No amount of time will further

"crystallize" appellees' "policy" in either regard, nor will deferral permit the development of a more concrete factual setting. There is no risk of unnecessary adjudication because the alleged injuries will survive, in the form of appellant's claims for damages, regardless of whether appellant is or is not ultimately restored to full membership and privileges at Greater Southeast.

We find, then, no prudential reason to defer consideration of appellant's antitrust claims that do not depend on termination.

b. *Appellant's Civil Rights Claims*

Appellant alleges that appellees have discriminated against him on racial grounds by subjecting him to the monitoring and supervision agreement and by refusing to act on his application for reappointment to the Medical Staff. We find that these claims are also ripe for adjudication and, on remand, should be considered on the merits.

■ If, as alleged, appellees have discriminated against appellant on the basis of race in their imposition of the monitoring and supervision agreement, this action would arguably give rise to private causes of action under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. §§ 1981 and 1985, as well as the relevant provisions of the District of Columbia Code.[11] The district court held, however, that the terms of the agreement could not be a source of injury to appellant because he entered into it "voluntarily." Mem. op. at 9. We think the district court erred in making that find-

laration of Thomas W. Chapman, attached as Exhibit 1 to Motion of Defendants to Dismiss or, in the Alternative, for Summary Judgment (filed Sept. 28, 1990) at 17.

11. Even though the monitoring and supervision agreement did not cause antitrust injury to appellant's practice, *see supra* note 10, it did impose severe constraints on his practice. And of course, there is no comparable requirement under the civil rights laws that one need allege or demonstrate pecuniary injury in order to seek redress of allegedly illegal racial discrimination. *See, e.g., Tillman v. Wheaton–Haven Recreation Ass'n*, 410 U.S. 431, 434, 93 S.Ct. 1090, 1092, 35 L.Ed.2d 403 (1973) (§ 1981 suit for damages

and injunctive relief alleging racial discrimination in the membership policy of a community pool); *Clayton v. White Hall School Dist.*, 875 F.2d 676, 679 (8th Cir.1989) ("Title VII ... is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination") (internal quotation omitted)); *Gray v. Greyhound Lines, East*, 545 F.2d 169, 176 (D.C.Cir.1976) (claim of discriminatory treatment in the workplace is "clearly within the scope of Title VII's protection against discrimination in the terms, conditions, or privileges of employment").

ing on voluntariness. The question of whether under all the attendant circumstances appellant "voluntarily" entered into the monitoring and supervision agreement is clearly a matter of dispute between the parties, and thus determinable only after an adversary hearing.

Although appellant actually signed the monitoring agreement, the language of the accompanying letter from the Hospital clearly shows that he signed it to avoid termination of his hospital privileges. The letter states:

> [p]ursuant to the recommendation of the Executive Committee at the meeting with you on August 21, 1989, the summary suspension of your privileges will be rescinded. *The rescission becomes effective when you return the signed [monitoring agreement].*

Letter from Medical Staff President to Appellant (Aug. 23, 1989) (emphasis supplied). Had appellant not signed the letter, the rescission would not have become effective and his hospital privileges would have been terminated immediately. Certainly if appellant is able to prove that the original termination was illegally motivated, it could not be said that he "voluntarily" entered into an agreement designed to rescind that unlawful termination.[12] The voluntariness issue was clearly in dispute and should not have been resolved on a motion to dismiss.

■ Appellant also alleges civil rights violations and injury in the failure of the Hospital to act on his application for reappointment to the Medical Staff. If racial animus animated that refusal, he has arguably suffered an additional injury cognizable under the civil rights laws.[13] In sum, then, appellant's allegations of civil rights violations appear to present no threshold jurisdictional obstacles to adjudication.

■ Appellees, however, again raise prudential objections to their consideration. And, at least insofar as the monitoring and supervision agreement is concerned, the

district court agreed, finding that even if it did in fact injure appellant, his claim was not ripe because the agreement was not a "permanent or final action" since the Hospital might rescind it upon completion of the termination process. Mem. op. at 9. The district court assumed, in effect, an exhaustion requirement whereby a party suffering allegedly discriminatory treatment must await the outcome of an internal institutional appeal before pursuing a civil rights claim in federal court.

■ This premise is not in accord with relevant precedents. A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court. *See Doe on Behalf of Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 425 (7th Cir.1986); *Donaldson v. Taylor Products Div. of Tecumseh Products Co.,* 620 F.2d 155, 158 (7th Cir.1980) (there is no exhaustion requirement under either of the civil rights acts); *Smallwood v. National Can Co.,* 583 F.2d 419, 421 (9th Cir.1978) ("[t]here is no duty to exhaust union remedies as a precondition to suit under Title VII"); *Rios v. Reynolds Metals Co.,* 467 F.2d 54, 57 (5th Cir.1972) ("aggrieved employees may seek relief under Title VII without first invoking or exhausting available alternative legal or contractual remedies"). In *Doe on Behalf of Doe v. St. Joseph's Hospital, supra,* a woman doctor of Korean descent sued a hospital alleging, *inter alia,* that the hospital suspended her medical staff privileges on account of racial and gender animus in violation of 42 U.S.C. § 1981 and Titles VI and VII of the Civil Rights Act of 1964. Before filing her federal suit, however, she had not appealed the Executive Committee's affirmance of her suspension in accordance with hospital bylaws. The hospital argued therefore that the district court properly dismissed her civil rights claims because she had failed to exhaust her internal administrative remedies. The Seventh Circuit ex-

---

**12.** *Cf. Johnson v. City of Columbia, S.C.,* 949 F.2d 127 (4th Cir.1991) (*en banc*) (fire fighter did not "voluntarily" agree to terms of employment agreement where City improperly threat-

ened him with termination if he did not sign agreement).

**13.** *See supra* note 11.

pressly rejected this argument, holding that exhaustion of remedies does not apply to claims under § 1981, Title VII of the Civil Rights Act of 1964, or, for that matter, *any* of the federal civil rights laws. *See Doe,* 788 F.2d at 425–26.

Appellant has alleged violations of the federal civil rights laws and resulting injuries stemming from the terms of the monitoring agreement and the Hospital's refusal to promptly reappoint him to the Medical Staff. His claims appear to be ripe for adjudication and the district court should consider them on the merits.

B. *Denial of Appellant's Motion for Summary Judgment on the Civil Rights Claims*

■ Appellant also appeals the district court's denial of his motion for partial summary judgment on his civil rights claims. Because we find no reason to depart from the general principle that a denial of a motion for summary judgment is not a reviewable final decision, *McSurely v. McClellan,* 697 F.2d 309, 315 (D.C.Cir. 1982), we decline to review the district court's denial of appellant's summary judgment motion.

C. *Appellant's Motion to Unseal the Record*

■ On motion of appellees, the district court sealed the entire record in this case, with the exception of appellant's complaint. In a brief order filed December 12, 1990, the district court found that sealing the record was necessary

in order to protect from public scrutiny the conduct of peer review activities within a health care facility. Such protection is necessary in order to promote and protect the peer review process in the health care industry, which in turn promotes improvement in health care.... [B]ecause every pleading in this case contains references to peer re-

view actions and materials, the Court believes that the more limited action of issuing a protective order to cover the peer review materials would have the same effect as sealing the entire case.

*Johnson v. Greater Southeast Community Hosp. Corp.,* No. 90–1992, Order at 2 (D.D.C. Dec. 12, 1990). Appellant has asked us to unseal the record.

■ "[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *United States v. Hubbard,* 650 F.2d 293, 316–17 (D.C.Cir.1980) (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)). In *Hubbard,* we noted that a district court's decision to limit access to judicial records should, however, be informed "by this country's strong tradition of access to judicial proceedings." *Id.* at 317 n. 89. Specifically, we articulated a series of factors that a district court should weigh in determining whether and to what extent a party's interest in privacy or confidentiality of its processes outweighs this strong presumption in favor of public access to judicial proceedings.[14]

We cannot discern from the district court's brief statement whether the court considered these factors in exercising its discretion to seal the record. Moreover, we do not think it sufficient merely to allude to the Hospital's general interest in keeping peer review processes out of the public eye. That rationale sweeps far too broadly and would encompass all litigation involving public and private institutions that provide essential services to the public. On remand, the district court should reconsider the need for sealing the entire case in light of the *Hubbard* principles. Should the court determine that any sealing order remains appropriate, it should articulate the

**14.** These factors include: (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. *See Hubbard,* 650 F.2d at 317–22.

precise reasons why, especially in view of appellant's desire for disclosure and an obvious public interest in being informed about the quality of health care.[15]

In sum, the district court should require appellees to come forward with specific reasons why the record, or any part thereof, should remain under seal. Should the court determine that some kind of sealing order is warranted, that order should be no broader than is necessary to protect those specific interests identified as in need of protection. In addition, any sealing order should not preclude appellant from turning over sealed materials to professional organizations that have a legitimate need to evaluate his credentials.[16]

### III. CONCLUSION

We remand this case to the district court to determine whether appellant's Medical Staff membership and privileges at Greater Southeast have in fact been terminated. If so, all of appellant's claims would appear to be ripe and the district court should proceed to adjudicate them on the merits. If termination has not taken place, the court should nonetheless consider the merits of appellant's claims that do not depend on whether appellant's Medical Staff membership and privileges have been terminated. Of course, we reach no conclusion as to the merits of any of appellant's claims. Finally, the district court should reconsider its decision to seal the entire record, and in so doing, assess the particular interests in confidentiality asserted by appellees and the extent to which a sealing order is necessary to protect them.

*So ordered.*

---

**15.** *Cf. Stone v. University of Maryland Medical Sys. Corp.,* 948 F.2d 128, 130 (4th Cir.1991) (Ervin, C.J.) (reversing trial judge's sealing of peer review materials in suit by physician against hospital; rejecting notion that "once ... medical records are properly subjected to pretrial discovery and may be admitted in evidence in the course of a civil action, that somehow, except as between the parties ..., they remain insulated from public exposure for all other purposes").

**16.** Counsel for appellant suggested at oral argument that the broad sealing order, by denying access to the medical records that appellant believes demonstrates the lack of merit of Greater Southeast's charges against him, has interfered with his ability to gain membership and privileges at other hospitals.