**Harold D. JOHNSON, M.D., Plaintiff,**

v.

**GREATER SOUTHEAST COMMUNITY HOSPITAL CORP., et al., Defendants.**

Civ. A. No. 90–1992.

United States District Court, District of Columbia.

April 14, 1992.

Shelley Hayes, Washington, D.C., for plaintiff.

Nicholas S. McConnell, Arthur D. Burger, Jackson & Campbell, Washington, D.C., for defendants.

Paul D. Pearlstein, Brent R. Jacques, Pearlstein & Jacques, Washington, D.C.

## ORDER

REVERCOMB, District Judge.

This case was remanded from the Court of Appeals on December 13, 1991, for the reasons set forth in the opinion by Judge Wald, 951 F.2d 1268. In that opinion, the Court of Appeals in its conclusion instructed this Court to

> determine whether [plaintiff's] Medical Staff membership and privileges at Greater Southeast [hospital] have in fact been terminated. If so, all of [plaintiff's] claims would appear to be ripe and the district court should proceed to adjudicate them on the merits. If termination has not taken place, the court should consider the merits of [plaintiff's] claims that do not depend on whether [plaintiff's] Medical Staff membership and privileges have been terminated.

Preceding this instruction, the Court of Appeals enunciated the several "non-termination claims" that it considered ripe for review. The Court of Appeals also urged this Court "to give serious consideration ... to any renewed motion to unseal [the record] in light of this circuit's demanding standards governing the sealing of judicial records" as set forth in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C.Cir. 1980), and in light of the Fourth Circuit Court of Appeals's recent holding, analogous to this case, in *Stone v. University of Maryland Medical Sys. Corp.*, 948 F.2d 128 (4th Cir.1991).

Remand to this Court has reactivated those portions of the defendants' motion to dismiss and/or for summary judgment that were not adjudicated before appeal due to dismissal of the suit on unripeness grounds, and has also reactivated plaintiff's motion for partial summary judgment on his civil rights claims. In addition, since mandate issued from the Court of Appeals, the plaintiff has renewed his motion to unseal the record, which the defendants have opposed, and the defendants have moved for a stay of discovery pending the Court's determination of whether plaintiff's staff membership and privileges in fact have been terminated, which plaintiff has opposed. As to defendants' motion for a stay, plaintiff has additionally moved for imposition of Fed.Rules Civ.Proc. Rule 11 sanctions on defense counsel on grounds that their request for a stay is frivolous and dilatory in light of Court of Appeals's opinion.

This Court has now considered the pleadings submitted on the motion to unseal, the motion for a stay, and the motion for sanctions, has heard argument from the parties on these motions, and has considered their recommendations on how this action might best proceed. For the reasons set forth below, the Court grants plaintiff's motion to unseal the record in its entirety. The Court denies the motions for both a stay and for sanctions for the reasons already stated on the hearing record on April 9, 1992. The Court further has established a schedule for discovery to proceed on all matters, including the issue of termination, and for submission of additional dispositive motions, which the Court will consider at a motions hearing along with those dispositive motions already pending. This schedule is set forth in a separate scheduling order.

During argument on his motion to unseal the record, the plaintiff reiterated the Court of Appeals's finding of "an obvious public interest in being informed about the quality of health care" through access to judicial records on the peer review proceeding at issue. Plaintiff also restated his own desire for disclosure, which apparently relates at least in part to difficulties the plaintiff encounters due to the seal in adequately addressing the inquiries of other hospitals at which he seeks to maintain or establish staff privileges. In addition, plaintiff has articulated a civil rights and antitrust based interest in a public airing of his charges of racial discrimination against black physicians at a hospital serving a predominantly black community. For their part, the defendants argued in essence that public access to records on the peer review process would compromise that process by chilling the frankness and the willingness of doctors to participate.

This Court has reviewed the Fourth Circuit's decision in *Stone, supra,* which the Court of Appeals cited with approval in remanding as "rejecting the notion that 'once ... medical records are properly subjected to pretrial discovery and may be admitted in evidence in the course of a civil action, that somehow, except as between the parties ..., they remain insulated from public exposure for all other purposes.'" 951 F.2d at 1278 n. 15. The defendant argues that *Stone* is distinguishable from this case because the Maryland peer review statute analyzed there differs from its District of Columbia analogue, D.C.Code § 32–505, because the Maryland provision withdraws the privilege of confidentiality in its entirety upon the filing of a lawsuit, whereas Section 32–505(b) allows a suing physician discovery of the peer review materials "for the *limited purpose of adjudicating* ... an adverse action" (emphasis added).

However, Section 32–505, like the Maryland statute, does not address the issue of public access to the *judicial* record by outside third parties once discovery is had. As far as its intended application to medical malpractice litigants, Section 505 provides only a "limited 'qualified privilege'" by which the legislature balanced

the "rights of persons who seek compensation for medical injuries negligently caused", on the one hand, and, on the other, the need to protect the deliberations of committees of hospitals which review medical treatment.

*Jackson v. Scott,* 118 Daily Wash.L.Rep. 1972, 1974 (D.C.Sup.Ct. Sept. 10, 1990)

(privilege overcome by plaintiff family members of decedent in wrongful death suit against surgeons and hospital). In addition to protecting peer review panels, logic dictates, as the *Stone* court put it, that the privilege's "[u]ndoubted[ ] ... premise[ ]" also was to protect "the due process rights of a physician aggrieved by the decision of the medical review committee." *Stone, supra,* 948 F.2d at 130. As to the peer review panel's interest, the *Jackson* decision observed that

> [i]t is unlikely that hospitals in the District of Columbia have structured their operations in the belief that the privilege [of Section 505] is impregnable. There are sound reasons why the functioning of peer review committees will continue, notwithstanding that "extraordinary necessity" may occasionally require disclosure of their proceedings. For one thing, ... the Joint Committee on Accreditation of Hospitals requires their [peer review committees'] use. For another, so does the Federal Government as a condition of receipt of Medicare and Medicaid funds.

118 Daily Wash.L.Rep. at 1974.

This Court is aware of no judicial decisions construing Section 32–505 under circumstances such as those presented in *Stone,* in which a third party newspaper sought disclosure of judicial records concerning peer review proceedings sealed by consent of both the plaintiff physician who was under review and the defendant medical employer. This case, however, presents a different, and in this Court's opinion, a more compelling argument for unsealing than that presented in *Stone* because the plaintiff physician under review is *advancing* disclosure and presents substantial personal and public interests supporting disclosure. The *Jackson* decision quoted above places in perspective the defendants' countervailing concern over a chilling effect on physician peer review, a concern which the *Stone* court saw as "solely a matter for the legislature to consider, if it deems it necessary to further limit the right of public access to committee materials in the interest of patient care." 948 F.2d at 131.

As to this Circuit's decision in *United States v. Hubbard, supra,* the foregoing discussion addresses the first of the six factors to be weighed in determining whether and to what extent a party's interest in confidentiality outweighs the strong presumption in favor of public access to judicial proceedings; *i.e.,* the public interest in access to the documents at issue. 650 F.2d at 617–18. The plaintiff argues that the policy favoring confidentiality of hospital peer review records is based on faith in the propriety of the underlying peer review process. In this case, that propriety has been placed in issue.

The second *Hubbard* factor, previous public access to the records, "*may* weigh in favor of subsequent access." *Id.* at 318 (emphasis added). Plaintiff states without contradiction that the 13 exhibits accompanying the complaint in this case were publicly available for more than a month prior to the Court's imposition of a seal in September 1990. To the extent that the rest of the record has not been publicly available, the Court finds that *Hubbard* does not support the defendants' conclusion that "no prior public access ... weighs in favor of non-disclosure." *Hubbard* held that "[d]etermining whether ... the public has already had access to court records in a given case cannot of course guide decision concerning whether ... the public *should* have access as an original matter". *Id.* This factor therefore appears to be neutral in this case.

On the third *Hubbard* factor, the fact and identity of those objecting to disclosure, the competing interests of the parties to this suit have already been discussed. As to the interests of third parties, *Hubbard* stated that when their "privacy rights are at issue the need for minimizing intrusion is especially great and the public interest in access to materials which have never been judicially determined to be relevant to the crimes charged is especially small[;] ... the fact that objection to access is made by a third party weighs in favor of non-disclosure." *Id.* at 319–20. In this regard, this Court maintains a continued concern that the confidentiality of individual patients whose cases were subject to the peer re-

view process might be violated through public access to the records of this litigation. However, no patient third parties have raised these concerns, and these are not the patient interests advanced by the defendants; rather, the defendants argue that they are "the appropriate entity ... charged with the responsibility for establishing and carrying out an *effective peer review program* to protect the interests of the patients in quality medical care" (emphasis added). Therefore, this factor also does not weigh into the balance in this case.

Applicability of the fourth *Hubbard* factor, the strength of the generalized property and privacy interests asserted, is unclear in this case. These interests are defined in *Hubbard* in context of documents at issue there, which belonged to a religious organization not party to that case and which were seized from a non-public area of that organization's church. No seized documents are involved in this case and no standing issue is presented. Therefore, on this factor, the Court will venture only that the plaintiff's property and privacy interests in the peer review proceedings appear to be at least as strong as those of the hospital and of his peer reviewers, since it is primarily the plaintiff's professional reputation and future at issue in those proceedings.

As to the fifth *Hubbard* factor, the possibility of prejudice to those opposing disclosure, the defendants again focus on the prospect of a chill to peer review. As already discussed, the Court considers this concern to be adequately addressed by the reasoning of the *Jackson* and *Stone* decisions quoted above, which indicate that the confidentiality privilege is intended to protect the patient and the physician under review in the first instance and, with limits, the integrity of the peer review process. The defendants give no indication that unsealing the record will prejudice them in this litigation.

As to the final factor, the purposes for which the documents were introduced, the Court finds not only that the peer review materials are relevant to this case, but that

they are the foundation of the dispute between the parties.

Accordingly, the Court finds on balance that the interests presented aggregate in favor of unsealing the record. The Court therefore vacates its previous decision and orders the entire record unsealed.

SO ORDERED.