Eloise Pepion **COBELL**,
et al., **Plaintiffs**,

v.

Gale **NORTON**, Secretary of the
Interior, et al., **Defendants**.

**CIV. A. No. 96–1285(RCL).**

United States District Court,
District of Columbia.

Aug. 14, 2001.

---

Lorna K. Babby, Native American Rights Fund, Dennis Marc Gingold, Washington, DC, Elliott H. Levitas, Atlanta, GA, for plaintiffs.

Tom C. Clark, U.S. Dept. of Justice, Land & Natural Resources Division, Brian L. Ferrell, Andrew M. Eschen, Sarah D. Himmelhoch, U.S. Dept. of Justice, Environmental & Natural Resources Division, Charles Walter Findlay, III, Edith R. Blackwell, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Division, Annandale, VA, for Bruce Babbitt.

Charles Walter Findlay, III, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Division, Annandale, VA, for Lawrence Summers.

John Most, Brian L. Ferrell, Jo-Ann Shyloski, Barry Weiner, U.S. Dept. of Justice, Environmental & Natural Resources Division, Charles Walter Findlay, III, Washington, DC, Terry M. Petrie, U.S. Dept. of Justice, Environmental & Natural Resources Division, General Litigation Section, Denver, CO, John Charles Cruden, U.S. Dept. of Justice, Environment &

Natural Resources Division, Annandale, VA, for Kevin Gover, Department of Interior, and Gale Norton.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Washington, DC, for Eleni M. Constantine.

Donald Michael Barnes, Seyfarth Shaw, Washington, DC, for Roberta McInerney.

David Booth Beers, Shea & Gardner, Washington, DC, for James Regan.

William Aaron Dobrovir, Warrenton, VA, for Daniel Mazella.

Pamela J. Marle, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for Randall Lewis.

Timothy Patrick Garren, U.S. Dept. of Justice, Civil Rights Division, Washington, DC, for U.S.

Brian L. Ferrell, U.S. Dept. of Justice, Environmental & Natural Resources Division, Washington, DC, for Department of the Treasury.

Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington, DC, for Timothy S. Elliott.

Amy Berman Jackson, Trout & Richards, P.L.L.C., Washington, DC, for Edith R. Blackwell.

Alan Lee Balaran, Washington, DC, Special Master.

Jonathan K. Tycko, Gibson, Dunn & Crutcher, L.L.P., Washington, DC, for Dow Jones & Co., Inc.

Christopher B. Mead, London & Mead, Washington, DC, for Kenneth F. Rossman.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Before the Court are the Department of the Treasury's Motion to File Documents Under Seal ("Motion to File Under Seal"), the Motion of Dow Jones & Company, Inc. to Intervene and For Access to Documents Filed Under Seal On November 2, 2001 ("Motion to Intervene and For Access"); Plaintiffs' Opposition to the Motion ("Plaintiffs' Opposition"); Treasury's Response to the Oppositions Filed by Dow Jones and Plaintiffs ("Treasury Response"); and Plaintiffs' Motion for Ad Hominem Sanctions and Award of Expenses Regarding the Motion ("Motion for Sanctions"). At the heart of these filings lies the December 3, 1999 Recommendation and Report of the Special Master Regarding the Delayed Disclosure of the Destruction of Uncurrent Check Records Maintained by the Department of the Treasury ("Special Master Report" or "Report")[1] which concluded, *inter alia*, that: (1) Treasury attorneys failed to keep themselves fully and timely informed of pleadings and court orders which directly affected their Secretary; (2) Main Treasury did not insert itself into the *Cobell* litigation for more than two years, despite FMS's troublesome record of reporting significant matters in a timely manner; (3) once involved, Main Treasury did not actively oversee FMS' search and review of the documents; (4) no employee at Main Treasury reviewed any of the Hyattsville files or requested regular written updates concerning the status of the search; (5) representations were made to the Court which were misleading if not false; and (6) many of these events occurred during the time the Court was finding the Secretary

---

1. The Report of Special Master Alan L. Balaran discussed the circumstances surrounding the destruction of 162 boxes of historical documents that took place between November 23, 1998 and January 28, 1999 at the Hyattsville facility of the Financial Management Service branch of the Department of the Treasury.

of the Treasury in contempt for violating his discovery obligations. *See* Special Master's Report, at 117–18; Supplemental Recommendation and Report of the Special Master Regarding the Delayed Disclosure of the Destruction of Uncurrent Check Records Maintained by the Department of the Treasury, at 2.

At the Conclusion of the Report, the Special Master recommended that,

the Department of the Treasury and the Department of Justice be required to report to the Court all steps they have taken to ensure that these incidents will never be repeated. I further recommend that this Court take no action at this time until the Court can review what corrective and/or disciplinary measures have been taken to hold accountable those responsible for the conduct described [in the Recommendations].

Report at 122.[2]

On December 17, 1999, Treasury filed the "Response of the United States to the December 3, 1999, Recommendation and Report of the Special Master" ("Response to Special Master Report") concurring in the Report's recommendations and outlining its contemplated corrective actions. Acknowledging that it "must have in place a process to meet [its] obligations, Treasury noted its regret[ ] that it did not inform the Court for several months that records were discarded," (Response to

Special Master Report, at 1) and informed the Court of its intent to commence an internal review and "then report to the Court on whatever actions are taken." Response to Special Master Report, at 5.[3]

As part of that internal review, Treasury empaneled a team of investigative attorneys ("Cobell Panel") "to conduct the management review of individual conduct and to offer recommendations to the Department's Deputy General Counsel regarding what management action was appropriate to address the conduct described in the Special Master's Report." Motion to File Under Seal at 3. On September 7, 2000, the Cobell Panel transmitted its recommendations to the Department's Deputy General Counsel ("Cobell Panel Report"); on October 25, 2000, the Deputy General Counsel rendered her decisions concerning the four of the six remaining counsel who were then employed by Treasury and opined as to what her decision would be for the two counsel no longer with the agency.[4]

The reports reflecting the results of the internal review as well as the correspondence and a memorandum generated by the Deputy General Counsel are the subject of the instant dispute. Specifically, those documents which Treasury seeks to shield from disclosure ("Sealed Documents"), include:

Report of the Special Master ("First Supplemental Report"); and on February 25, 2000, filed its Second Supplemental Report of the United States on Corrective Measures Discussed in its Response to the December 3, 1999 Recommendation and Report of the Special Master ("Second Supplemental Report").

---

2. Those attorneys held particularly accountable included then-FMS former Deputy Chief Counsel Ingrid Falanga, FMS Senior Counsel Randy Lewis, FMS Senior Counsel Daniel Mazella, FMS Attorney–Advisor James Regan, Department of the Treasury Deputy Assistant General Counsel Eleni Constantine and Department of the Treasury Assistant General Counsel Roberta McInerney

3. On January 18, 2000, Treasury filed its Supplemental Report of the United States on Corrective Measures Discussed in its Response to the December 3, 1999 Recommendation and

4. At the time the Cobell Panel Report issued, neither Daniel Mazella nor Ingrid Falanga were employed with the Department of Treasury.

- the September 7, 2000 Cobell Panel Report;
- the letters to each of the six counsel, whose conduct was the subject of the Special Master Report, reflecting the Deputy General Counsel's decision and bases therefor;
- the letter to the Commerce Department regarding the former Treasury employee who is not employed by that agency; and
- the memorandum informing the Deputy Secretary of the Deputy General Counsel's decisions and attachments analyzing relevant Model Rules of Professional Responsibility.

These documents were distributed for comment on November 2, 2000 to the six attorneys whose conduct was implicated in the Special Master Report. In response, Ingrid Falanga "consent[ed] to the unsealing of the documents filed with the Department of Treasury's Motion to File Documents Under Seal, provided that the Department of Treasury agrees that the document that [she] filed yesterday ... be made part of the record in this case;" Randall Lewis indicated that he "does not object and consents to the unsealing and public filling of the documents attached to the Department of Treasury's Motion to File Documents Under Seal;" Roberta McInerney stated that she "has no objection to the release of those portions of the Treasury Department material which re-

late to her conduct in this matter." On November 13, 2000, Eleni Constantine affirmed that "the materials relating to the internal Treasury review should be made available as a matter of public record;" James Regan stated that he "does not intend to oppose either the Dow Jones motion or the plaintiffs' request for access to those documents." Daniel Mazella stated that he "takes no position on whether the material [ ] filed under seal on November 2, 2000, should be made part of the public record."

■ Treasury argues that, while it is proscribed from publicly disseminating the Sealed Documents in accordance with the Privacy Act 5 U.S.C. § 552a(b), the Court is not so restricted.[5] Treasury Response, at 3. Rather, it requests that this Court "not disclose or release any portion of these documents or any information contained therein to the Plaintiffs or the public" in recognition of the fact that they contain "sensitive personnel matters contained in the Employee Performance File System." Motion to Seal at 6.[6]

■ Dow Jones & Company, Inc. ("Dow Jones") seeks to intervene in the instant discussion[7] and asks the Court to grant public access to the Sealed Documents on the grounds that the Privacy Act does not apply to the Sealed Documents, the Court is not bound by the Act and the presumption that such access is mandated by both common law and constitutionally.[8]

---

5. The Privacy Act provides, in relevant part, that

    No agency shall disclose any record which is contained in a system of records by means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

    5 U.S.C. § 552a(b).

6. As this Court is not an "agency" as defined by the Act, neither it nor its records are

circumscribed by its restrictions. *See Standley v. Department of Justice*, 835 F.2d 216, 218 (9th Cir.1987) ("The Privacy Act does not apply to records of 'the courts of the United States.' ") (*quoting* 5 U.S.C. § 551(1)(B)).

7. In the absence of any opposition, Dow Jones' request to intervene is granted.

8. Plaintiffs join Dow Jones in these arguments and, in addition, ask that Treasury "be sanctioned for filing such a frivolous motion." Motion for Sanctions at 6. In support, plain-

Dow Jones and plaintiffs argue that the Privacy Act has no application to the instant equation and that the six factors articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980) and the teachings of the First Amendment militate in favor of public disclosure.

■ This Court finds that the common law counsels in favor of releasing the Sealed Documents and, accordingly, it need not reach the constitutional issue.[9] *See Eldred v.Reno*, 239 F.3d 372, 378 (D.C.Cir.2001) ("a court should avoid ... a constitutional issue the resolution of which is not essential to the disposition of the case before it."); *Karriem v. Barry*, 743

F.2d 30, 38–39 (D.C.Cir.1984) ("it is the general policy of the federal courts to avoid addressing broad constitutional issues unless their resolution is imperative in the context of the case at hand.").

■ In *Hubbard*, the Church of Scientology, a third party to a criminal case, petitioned the appellate court for a writ of mandamus to prevent the district court from unsealing certain documents. Ruling that "the seal on the documents at issue [ ] should not have been lifted, and should have continue[d] unless on remand some substantial factors [were] identified which weigh in favor of public access to particu-

tiffs cite to the inapplicability of the Privacy Act to the documents at issue. They further contend that the instant motion need not have been filed had Treasury consulted in advance with the six attorneys and learned that five consented to its release. Upon review of the record, it is the Court's view that the imposition of sanctions is inappropriate under Rule 11 of the Federal Rules of Civil Procedure, the inherent authority of the Court, or under 28 U.S.C. § 1927. These rules are prophylactic measures to protect the court from frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings. *See generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899 (D.C.Cir. 1998). Here, Treasury's interposition of its responsibilities under the Privacy Act does not rise to level of being "frivolous" or "vexatious." Treasury does not maintain that the Court is subject to, or restricted by, the Privacy Act. Treasury Response at 3. It requests, rather, "that this Court not disclose or release any portion of these documents or any information contained therein," in a manner *"[c]onsistent* with the Privacy Act." Motion to Seal, at 6 (emphasis added). As an agency which is responsible for maintaining the confidentiality of its personnel records, Treasury is not accountable because it chose not to release these records when faced with representations that three of the attorneys consent, two do not object and one simply "takes no position." The Privacy Act, which demands

nothing short of "prior written consent," permits no such equivocation.

9. Dow Jones grounds its argument that access to the Sealed Documents "is mandated by the First Amendment to the United States Constitution," (Motion to Intervene at 12) on the Supreme Court's ruling in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). There, the Court balanced the constitutional issues surrounding public access to criminal trial proceedings and held that such access can only be limited if "the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper*, at 606–607, 102 S.Ct. 2613. In reaching this ruling, however, the Court emphasized that its decision rested on the premise that "the institutional value of the open *criminal* trial is recognized in both logic and experience." *Id* at 606, 102 S.Ct. 2613 (emphasis added). Not only are these overarching concerns not necessarily transmutable to the civil context, the instant dispute concerns access to documents, not to formal proceedings. This jurisdiction has taken explicit notice of this distinction when it held that it "seems unlikely" that the considerations in favor of openness in the criminal realm apply with equal force in civil proceedings in part because documents "do not contain unrecordable subtleties" like those present in live proceedings. *See In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C.Cir.1985).

lar documents," 650 F.2d at 322, the Court "articulated a series of factors that a district court should weigh in determining whether and to what extent a party's interest in privacy or confidentiality of its processes outweighs this strong presumption in favor of public access to judicial proceedings." *Johnson v. Greater Southeast Community Hosp. Corp.,* 951 F.2d 1268, 1277 (D.C.Cir.1991). These factors include:

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced.

*Id.* at n. 14 (*citing Hubbard,* 650 F.2d at 317–22).

■ Before analyzing the facts presented here against the *Hubbard* paradigm, this Court is mindful of the "strong presumption in favor of public access to judicial proceedings." *Johnson, supra,* 951 F.2d at 1277 and the court's power "over its own process to prevent abuse, oppression and injustice." *Gumbel v. Pitkin,* 124 U.S. 131, 146, 8 S.Ct. 379, 31 L.Ed. 374 (1888). *Accord E.E.O.C. v. National Children's Center, Inc.,* 98 F.3d 1406, 1408 (D.C.Cir.1996); *Public Citizen Health Research Group v. Food and Drug Admin.,* 953 F.Supp. 400, 405 (D.D.C.1996). Indeed, the presumption in favor of disclo-

sure has led this jurisdiction to caution that,

> access may be denied only if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires. The court's discretion must clearly be informed by this country's strong tradition of access to judicial proceedings. In balancing the competing interests, the court must also give appropriate weight and consideration to the presumption however gauged in favor of public access to judicial records. Any denial or infringement of this precious and fundamental common law right remains subject to appellate review for abuse.

*In re Nat. Broadcasting Co., Inc.,* 653 F.2d 609, 613 (D.C.Cir.1981) (citations and internal quotation marks omitted).[10]

Therefore, in determining whether and to what extent Treasury's interest in ensuring the confidentiality of the Sealed Documents "outweighs the strong presumption in favor of public access to judicial proceedings; *i.e.,* the public interest in access to the documents in issue," *Johnson v. Greater Southeast Community Hospital Corp.,* 789 F.Supp. 427, 429 (D.D.C.1992) the following discussion addresses, as it must, each of the *Hubbard* factors in turn. *See In re Sealed Case,* 237 F.3d 657, 666 (D.C.Cir.2001) ("[i]f this were a typical case, we would hold that the district court

---

10. Indeed, 28 C.F.R. § 50.9 codifies the Department of Justice's policy in support of public access. Under this policy, government attorneys have "a general overriding affirmative duty to oppose" closure of judicial proceedings (*id.*) and are proscribed from moving for or consenting to such closure absent the danger of denial of a fair trial, a person's safety, or an ongoing investigation. *Id.* at § 50.9(c)(6). Moreover, even if one of these interests is present, § 50.9(c) provides that closure will not be warranted absent public notice and a viable alternative to protect the personal or safety interests at stake and then, it is to be "minimized to the greatest extent possible." *Id.*

abused its discretion for ... failing to consider any of the *Hubbard* factors.").

### 1. *The Need for Public Access to See the Documents at Issue.*

This Court must, at the threshold, consider the legitimacy of Dow Jones' and plaintiffs' requests for public access to the information contained in the Sealed Documents. To be resolved is whether the public has a bona fide interest in having the conduct of government agencies and its officials (or the conduct of publicly-funded private organizations) revealed. Courts faced with this question have answered emphatically in the affirmative. *See, e.g., In re Nat. Broadcasting Co., Inc.,* 653 F.2d 609, 614 (D.C.Cir.1981) (public interest validated for government officials); *E.E.O.C. v. National Children's Center, Inc.,* 98 F.3d 1406, 1409 (D.C.Cir.1996)("on balance the nature of the services provided by the Center as well as the Center's receipt of public funding cuts against rather than in favor of sealing the record"); *United States v. Beckham,* 789 F.2d 401, 413 (6th Cir.1986)("when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.").

The public's interest in being afforded access to the Sealed Documents can not be overstated. The underlying litigation has not only brought to light the federal government's continued breach of its substantial trust responsibilities toward Native Americans but, in a historic proceeding, the contumacious conduct of two former Cabinet members. *See Cobell v. Babbitt,* 37 F.Supp.2d 6, 9 (D.D.C.1999).[11] Significantly, during this very time period, it was revealed that attorneys for the Department of Treasury were actively concealing from the Court the fact that documents had been destroyed in Hyattsville, Maryland. The Court dispatched the Special Master to investigate the circumstances surrounding the destruction; on December 3, 1999 the Special Master issued a detailed report finding, *inter alia,* that six Treasury attorneys were complicit in not reporting the matter to the Court in a timely manner.

Following the issuance of the Special Master Report and its Supplement, Treasury filed several reports with the Court concurring with the Report's findings and delineating a plan to bring it into compliance. In that spirit, in its Response to Special Master Report, Treasury described the assignment of new litigation teams, the increase of senior management oversight, increased collaboration with the Special Master and the Department of Justice, the issuance of directives designed to prevent potentially responsive documents from being destroyed, the implementation of quality assurance and control procedures, new records-retention schedules, augmentation of the litigation support personnel, training of all Treasury Department Legal Division attorneys in the Model Rules of Professional Conduct, in the Federal Rules of Civil Procedure, in the procedures established in General Directive No. 14 relating to "significant litigation," in the preservation of documents and others. Response to Special Master Report at 2–4.

---

11. It was as a result of this conduct that the Court appointed a Special Master "to oversee discovery, document production, and related matters and to effectuate compliance with this Court's orders" recognizing that "[t]he Defendants simply cannot be trusted to do this job themselves." 37 F.Supp.2d at 37. With what can only be described as prescience, the Court articulated its concern that "their attorneys cannot be trusted to accurately inform the court should compliance become a further issue" *Id.*

Indeed, in one of its filings, Treasury emphasized that it "has made significant strides to alleviate the institutional shortcomings recognized in the Special Master's Report and has kept the Court, plaintiffs, and the public apprised of these actions." Treasury Response at 4. The question remains whether the conduct engaged in by the six government attorneys constitutes one of these "institutional shortcomings" and whether Treasury's efforts to alleviate the problems include the disciplining of those who violate court orders. If so, Treasury offers no compelling reason why the public should be denied access to these remediation efforts and allow that public to determine whether the "strides" taken by Treasury to "alleviate" this shortcoming are, indeed, "significant." When the Court engages in historic proceedings that culminate in findings of contempt against United States Cabinet members for disregarding court orders, public confidence in government is undermined. When that conduct becomes a pattern exhibited by officers of the court, public confidence is further weakened. Concealing efforts undertaken to correct these problems will only serve to further erode that confidence both in the government and in the judiciary that lends its imprimatur to that concealment. *See In re 50–Off Stores, Inc.,* 213 B.R. 646 (Bkrtcy.W.D.Tex.1997) ("public access to court records and proceedings ought to be insured, in order to preserve public confidence in the integrity of the judicial process.").

In short, the right of the public to be informed as to what disciplinary actions have either been taken or proposed against the six public officials is beyond question. Treasury's position that "the Court, the plaintiffs and public are entitled to information concerning the actions Treasury was taking with respect to the conduct of the attorneys identified in the Special Master Report," must constitute more than lip service. It must embody "the very openness of the process [that] should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 162 (3rd Cir.1993)(quotation omitted).

2. *The Extent to Which the Public Had Access to the Documents.*

While technically correct that the public has not had access to the Sealed Documents, Treasury overlooks the fact that the public has had access to hundreds of pages of reports chronicling, in meticulous detail, the events surrounding the destruction of documents at the Hyattsville facility. Treasury admits that the internal review process which yielded the Cobell Panel Report currently under seal, "[took] into account, *inter alia,* the Special Master's Report, the full evidentiary record developed by the Special Master, any objections to the Report served by the affected individuals, any supplemental Report prepared by the Special Master, and other relevant information." Treasury Response, at 5. Both the Special Master Report and the Supplemental Report are documents of public record. In addition, both reports painstakingly detail the evidentiary record that, according to Treasury, was taken into account in producing the Cobell Panel Report. Having been so exposed to the minutiae of events surrounding the destruction and its subsequent coverup, the fact that the public is not yet apprised of Treasury's internal disciplinary recommendations is of no moment. *See SEC v. Stratton Oakmont, Inc.,* 1996 WL 312194 (D.D.C.1996) ("once a public request for the information has been made, the Court cannot justify keeping information under seal that is substantially in the public domain."). *Cf. In re*

*Pepco Employment Litigation*, 1992 WL 115611 at *8 (D.D.C.1992) (granting motion to seal where "[t]he public has had *virtually no access* to the documents in question.")(emphasis added). Once again, the balance tilts in favor of disclosing the Sealed Documents.

### 3. The Fact That a Party Has Objected to Disclosure and the Identity of That Party.

Treasury asserts that the Sealed Documents should remain sealed in recognition of its "strong institutional interest" in assuring its approximately 2,000 attorneys that it will shield individual personnel matters from disclosure. Motion to Seal at 7. This Court does not trivialize the need for Treasury to ensure that, as a matter of course, personnel matters remain undisclosed. Here, however, this concern is more than adequately counterbalanced by the responses of the six attorneys with "strong reputational interests in avoiding disclosure," *id.*, who have consented to or have indicate no objection to public disclosure. Where the individuals whose privacy interests are in question have interposed no objections, defendant's institutional challenge is not persuasive. *See Johnson*, 789 F.Supp. at 429 ("no patient third parties have raised these concerns, and these are not the patient interests advanced by the defendants; rather, the defendants argue that they are 'the appropriate entity . . . charged with the responsibility for establishing and carrying out an effective peer review program to protect the interests of the patients in quality medical care.' Therefore, this factor also does not weigh into the balance in this case."). (Emphasis omitted.) [12]

### 4. The Strength of the Property and Privacy Interests Involved.

The records of concern here clearly implicate the privacy interests of the six Treasury employees and go to the heart of their professional reputations. As stated, *supra*, these interests, are firmly offset by the informed consent or lack of objection interposed by these attorneys. This factor, too, counsels in favor of disclosure.

### 5. The Possibility of Prejudice to Those Opposing Disclosure.

Treasury has explicitly acknowledged the validity of the Special Master Report and its findings and has embarked on a course of actions ostensibly targeted at correcting the problems identified therein. Having done so, Treasury can not logically argue that its internal disciplinary decisions will prove prejudicial to its position in the underlying litigation. The absence of such a possibility of prejudice, again, counsels against the sealing of these records.

### 6. The Purposes for Which the Documents Were Introduced.

Treasury "submitt[ed] the [Sealed Documents] to the Court in fulfillment of its commitment to the Court to do so." Motion to Seal, at 7. The Court finds these documents relevant to assessing Treasury's stated commitment to "undertake[ ] extensive efforts" Treasury Response at 6. As one of numerous such commitments which have been made part of the public record, there is no compelling reason why this factor should not further sway the balance in favor of disclosure.

---

**12.** Beyond this, defendants' statement that, "as an institution Treasury is not opposed to the release of this information," should the Court consider it proper to do so, Treasury Response at 3, cuts sharply against the validity of its institutional challenge.

*Conclusion*

Upon review of the record herein, it is the opinion of this Court that whatever privacy or confidentiality interests Treasury may articulate in favor of keeping sealed the documents reflecting its internal disciplinary processes, those interests are easily outweighed by the strong presumption in favor of public access. The Court finds that, in the aggregate, the interests presented militate in favor of unsealing the records comprising the Sealed Documents.

Additionally, the Court concludes that the corrective action taken by Treasury—including this report—stands in marked contrast to the dearth of corrective action taken by the Interior Department and the Justice Department. Neither of those agencies has provided any report whatsoever—under seal or otherwise—demonstrating that they have held *any* attorney accountable in *any* way whatsoever for *any* misconduct in this litigation.

Some members of the public may question whether Treasury went far enough in its disciplinary proceedings. That remains to be determined by this Court. But the Court believes that release of this report will demonstrate to the public that Treasury has taken a step in the right direction, a step that the Interior and Justice Departments have not demonstrated.

A separate order shall issue this date.

## ORDER

Before the Court are the Department of the Treasury's Motion to File Documents Under Seal; the Motion of Dow Jones & Company, Inc. to Intervene and For Access to Documents Filed Under Seal On November 2, 2001; Plaintiffs' Opposition to the Motion; Treasury's Response to the Oppositions Filed by Dow Jones and Plaintiffs; and Plaintiffs' Motion for Ad Hominem Sanctions and Award of Expenses Regarding the Motion.

Upon review of the pleadings and the entire record herein, for the reasons set forth in an accompanying Memorandum Opinion, it is hereby

ORDERED that Department of the Treasury's Motion to File Documents Under Seal be, and hereby, is DENIED; it is further

ORDERED that the Motion of Dow Jones & Company, Inc. to Intervene and For Access to Documents Filed Under Seal On November 2, 2001 be, and hereby is, GRANTED; and it is further

ORDERED that Plaintiffs' Motion for Ad Hominem Sanctions and Award of Expenses Regarding the Motion be, and hereby is, DENIED; and it is further

ORDERED that Defendants' Motion to Strike Plaintiffs' Motion for Ad Hominem Sanctions is DENIED, as is Defendants' Cross–Motion for Sanctions; and it is further

ORDERED that those documents which constitute the Sealed Documents are hereby unsealed and made part of the public record.; and it is further

ORDERED that the motions of Daniel J. Mazella and Ingrid D. Falanga to File Documents Under Seal are DENIED. By letter dated November 13, 2000, on November 10, 2000 (attached to Treasury's response to Dow Jones' motion), counsel for Mazella and Falanga indicated that if the Treasury Report was unsealed by the Court, they would want their responses to be part of the unsealed record. Further, it is

ORDERED that defendants FORTH-WITH provide to each counsel for the six

named Treasury employees the Sealed Documents.

SO ORDERED.