# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 14, 2005          Decided June 9, 2006

No. 03-5288

IN RE: DIRK KEMPTHORNE SECRETARY OF THE INTERIOR IN HIS
OFFICIAL CAPACITY,
PETITIONER

On Petition for Writ of Mandamus to the
United States District Court for the District of Columbia
(No. 96cv01285)

*Thomas M. Bondy*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Gregory G. Katsas*, Deputy Assistant Attorney General, *Robert E. Kopp*, *Mark B. Stern*, *Alisa B. Klein*, *Mark R. Freeman*, and *I. Glenn Cohen*, Attorneys. *Charles W. Scarborough*, Attorney, entered an appearance.

*Mark I. Levy* argued the cause for respondents. On the brief were *Dennis M. Gingold*, *Elliott H. Levitas, G. William Austin, III*, and *Keith M. Harper*.

Before: GINSBURG, *Chief Judge*, and HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  The Secretary of the Interior, in his official capacity, petitioned this court for a writ of mandamus disqualifying Special Master Alan Balaran and suppressing three reports he filed with the district court in the on-going litigation involving Interior's management of trust accounts for the benefit of American Indians, *Cobell v. Norton,* No. Civ. A. 96-1285 (D.D.C.).  Although Balaran has since resigned as Special Master, Interior still seeks to suppress both his interim report on the misconduct charges Native American Industrial Distributors, Inc. (NAID) made against the Department and two reports on his visits to Interior facilities where individual trust account information is maintained. Before writing the three reports, Balaran had hired a former employee of NAID to assist him, thereby creating a situation in which his "impartiality might reasonably be questioned" and requiring his disqualification pursuant to 28 U.S.C. § 455(a). We therefore grant the Secretary's petition and order that the three reports be suppressed.

## I.  Background

The Special Master's reports at issue here arise from the protracted litigation over Interior's mishandling of the Individual Indian Money (IIM) trust accounts created for each Indian having an interest in certain allotted lands.  The facts and procedural history we recount here tell but a small portion of the full story of that class action, which began a decade ago.  For a more complete account, see *Cobell v. Norton*, 334 F.3d 1128, 1133-34 (D.C. Cir. 2003).

In 1999 the district court concluded that by failing properly to account for the balances in the IIM trust accounts, the Department, as trustee, had breached the fiduciary duty it owed to the plaintiffs under the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. § 4001 *et seq*. *See Cobell v. Babbitt*, 91 F. Supp. 2d 1, 40-50 (D.D.C. 1999).  The

court directed the Department to design and implement an accurate accounting and record-keeping system for the trust accounts; retained jurisdiction in order to provide "ongoing judicial review of trust reform efforts"; and ordered the Department to file quarterly progress reports. *Id*. at 57. The better to monitor Interior's progress, the district court authorized Special Master Alan Balaran to oversee the "Department's retention and protection from destruction of IIM Records through ... on-site visits to any location where IIM Records are maintained." Balaran was later charged also with oversight of the Department's policies and procedures relating to the security of IIM records.

A significant element in the plan to reform Interior's trust management is the creation of the Trust Asset and Accounting Management System (TAAMS), a computerized record-keeping system meant to account properly for balances in IIM trust accounts. For assistance with the TAAMS project, the Department retained NAID, an information technology firm. In August 2002 NAID filed a motion to intervene as a plaintiff in the class action, claiming the Department had unilaterally modified its contract with the company, effectively replacing it with a competitor, in retaliation for NAID's unfavorable assessment of the TAAMS project. NAID also alleged the Department had omitted material information from its Eighth Quarterly Report, which it filed with the district court in January 2002. Upon determining the company could seek relief only under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et. seq*., the district court in September 2002 dismissed NAID's motion to intervene.

In October 2002 Special Master Balaran, following up on NAID's allegations, contacted the Department of Justice and asked for a copy of the administrative record upon which the Interior Department had based the Eighth Quarterly Report. Some weeks later the district court formally sanctioned

Balaran's inquiry, directing him "to ascertain whether there is any validity to NAID's contention that ... Interior withheld information from the Court that should have been disclosed in the Eighth Quarterly Report." In late January 2003 Interior's counsel at Justice wrote to Balaran stating that Interior would produce unprivileged documents, along with a privilege log, by mid-February, but that did not happen. Interior's counsel instead invited Balaran to inspect the documents at the Department of Justice, which he did on February 27. Interior's counsel also arranged for Mr. Michael S. Smith, an Executive Vice President of NAID who had worked on the "TAAMS Project Team" and was knowledgeable about the administrative record, to attend on the 27th. Earlier that year, Smith had written to Interior on NAID's behalf reiterating the allegations of fraud and demanding monetary relief.

Shortly after the inspection, and unbeknownst to the Departments of Interior and of Justice, Balaran hired Smith to assist him in collecting and analyzing documents relevant to his investigation into the completeness and accuracy of the Eighth Quarterly Report. Balaran also made Smith's employment "retroactive" from the date of the inspection. In due course Balaran submitted to Interior billing records indicating that from February 27 to April 14, 2003 inclusive one "MSS" had worked some 110 hours on the investigation, much of that time specifically "Review[ing] 8th QR documents," "Analyz[ing] 8th QR Exhibits," and "Draft[ing] 8th QR Analysis." On April 16 Smith, according to the President of NAID, "terminated any and all relationships with Special Master Balaran," after which NAID was his "sole employer."

On April 21 Balaran issued a 55-page interim report to the district court, on the first page of which he noted that he had relied upon "documentation obtained outside of normal channels and to [sic] which the parties may have no familiarity." The referenced documents were attached to the report in the form of

73 exhibits. The report detailed Interior's alleged intention to mask certain deficiencies of the TAAMS project and concluded the Eighth Quarterly Report failed to provide "a clear and independent picture of trust reform"; rather, it was designed "to avoid liability at all costs."

Apart from his investigation of the alleged cover-up relating to TAAMs, in March 2003 Balaran had visited Interior's offices in Gallup, New Mexico and Window Rock, Arizona, and in September he inspected the Department's office in Dallas, Texas. In August and September Balaran issued site-visit reports in which he criticized various aspects of the Department's operations at those facilities.

In the meantime, having learned that Balaran had employed Smith, Interior moved in May 2003 to disqualify Balaran from further participation in the case, pursuant to 28 U.S.C. §§ 455(a) (requiring recusal "in any proceeding in which [a judge's] impartiality might reasonably be questioned") and 455(b)(1) (requiring recusal where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"). The class action plaintiffs opposed the motion. Six months later, the district court not having ruled upon the motion, the Secretary of the Interior petitioned this court for "a writ of mandamus directing the recusal of Special Master Alan Balaran." The district court then denied the Department's motion to disqualify Balaran, s*ee Cobell v. Norton*, 310 F. Supp. 2d 102, 104 (D.D.C. 2004) (holding Special Master Balaran "engaged in no untoward conduct"), after which Balaran resigned as Special Master.

Then came *In re Brooks*, 383 F.3d 1036 (D.C. Cir. 2004), in which we held Special Master Balaran's *ex parte* contacts with parties and counsel to certain contempt proceedings arising from this same class action necessitated his recusal with respect to those proceedings under both §§ 455(a) and (b)(1) of 28

U.S.C. *Id.* at 1046. In order to protect those proceedings from the taint of his participation, we ordered that Balaran's work product relevant to those proceedings be suppressed. *Id.* In light of that decision, Interior now urges us to suppress the three reports Balaran issued after he hired Smith.

## II. Analysis

Although Interior concedes that "Balaran's resignation mooted the question of his further participation in the case," the Department argues suppression of the three reports is still appropriate if Balaran was disqualified as Special Master before he submitted those reports to the district court. The class action plaintiffs claim the Department's mandamus petition became moot in its entirety upon Balaran's resignation and oppose suppression of the three reports here at issue.

## A. Mootness

The plaintiffs point out that Interior's mandamus "petition requested no other relief than an end to [Balaran's] involvement in the underlying litigation." Because "there is no need for the Court to decide whether to compel [Balaran's] removal from further involvement in the case" now that he has resigned, the plaintiffs maintain the entire case is moot.

Interior responds that a live controversy remains because the plaintiffs continue to rely upon the disputed and allegedly tainted reports in support of related claims and motions they have filed with the district court. In any event, the Department maintains, our decision *In re Brooks* is controlling on the question of mootness: Although Balaran had resigned while that case was pending, we held the petitions for writs of mandamus recusing Balaran from the contempt proceedings were not moot because his work product was still at issue; therefore we addressed the petitions on their merits, held Balaran disqualified,

and suppressed his tainted work product even though, as in this case, the petitions did not expressly request suppression. *Id.* at 1044-46.

We agree with Interior that *In re Brooks* forecloses the plaintiffs' contention the instant petition is moot. There we squarely held Balaran's resignation did not render moot the mandamus petitions seeking his recusal from the contempt proceedings even though, as the class action plaintiffs pointed out, "vacatur of Balaran's reports and recommendations was not the relief requested in the petitions." *Id.* at 1044. The cases are on all fours in this respect and the result, therefore, must be the same.

## B. Disqualification of the Special Master

We explained *In re Brooks* that "[i]f ... Balaran should have been recused from the contempt proceedings, then any work produced pursuant to the [contempt] referrals must also be 'recused' -- that is, suppressed." *Id.* Similarly, in this case to determine whether we should suppress the reports at issue, we must address the merits of Interior's petition to disqualify Balaran. Although a writ of mandamus is "an extraordinary remedy," *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988), we will issue the writ "compelling recusal of a judicial officer where the party seeking the writ demonstrates a clear and indisputable right to relief." *In re Brooks*, 383 F.3d at 1041.

Under 28 U.S.C. § 455(a) a "justice, judge or magistrate judge" must recuse himself "in any proceeding in which his impartiality might reasonably be questioned ... by one fully apprised of the surrounding circumstances." *Cobell*, 334 F.3d at 1143 (internal quotation marks omitted). Under § 455(b)(1) he must recuse himself if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed

evidentiary facts concerning the proceeding." We have held that a special master is subject to the same ethical restrictions as a judge when the special master serves as the "functional equivalent" of a judge even though the special master is under a judge's "control." *Jenkins v. Sterlacci*, 849 F.2d 627, 630-32 (D.C. Cir. 1988).

The plaintiffs contend § 455 is simply inapplicable here, "[f]irst and foremost" because Balaran's "assignment was solely investigatory (rather than 'adjudicative')." On the contrary, the district court charged the Special Master with finding the facts in the first instance and making a "report and recommendation detailing his findings and conclusions." As we held *In re Brooks*, Balaran's role in assessing allegations of misconduct "plainly demonstrates the adjudicative nature of [the] position," 383 F.3d at 1045; he was "functionally indistinguishable from ... a trial judge." *Jenkins*, 849 F.2d at 631. The disqualification provisions of § 455 therefore applied fully to Balaran in his conduct of that investigation.

Interior contends Balaran's conduct warranted his disqualification under both §§ 455(a) and (b)(1). NAID charged the Department had committed a fraud on the court by omitting from its Eighth Quarterly Report material information on the progress of the TAAMS project and, as explained below, after unsuccessfully attempting to intervene in the class action, NAID brought administrative proceedings against the Department in connection with those allegations. The Department also points to the plaintiffs' statement in their brief that Balaran hired Smith specifically to identify and produce "many of the [exhibits] used to prepare the Interim Report filed on April 21, 2003." Invoking § 455(a), the Department contends that "[a] judicial officer who collaborates with an accusing party to determine the accuracy of the party's accusations cannot under any objective standard be thought to be impartial." Alternatively, Interior argues Balaran exhibited actual bias, in violation of § 455(b):

"[t]he retention of Mr. Smith revealed Mr. Balaran's bias, it did not create it."

With respect to § 455(a), the plaintiffs respond that an objective observer would not question Balaran's impartiality because his interim report includes only "findings firmly rooted in evidence"; indeed, we are told, "[e]very fact is supported by one of the 73 exhibits [Balaran] attached to his report -- exhibits containing the very record Interior was ordered to turn over ... but did not." Furthermore, Balaran's site visit reports were made pursuant to the district court's authorization and direction to investigate the "retention and protection from destruction of IIM Records through ... on-site visits to any location where IIM Records are maintained." Because Balaran had broad authority to investigate and to interview any relevant persons in connection with NAID's allegations, the plaintiffs reason that Interior has not produced any evidence Balaran either was or appeared to be biased.

We agree with the Department that Balaran should have recused himself pursuant to § 455(a). His impartiality was placed in question when he hired Smith because NAID, of which Smith was until then a senior executive, stood to gain financially from a finding of misconduct. As recounted above, NAID had sought to intervene in the class action against Interior and had been remitted by the district court to an administrative action against the Department for relief under the Contract Dispute Act of 1978. A finding by Balaran that Interior covered up deficiencies in the TAAMS over NAID's protests would tend to support NAID's claim that the Department terminated its contract because of the company's unfavorable assessment of the TAAMS project. In fact, Smith -- who returned to NAID after working for Balaran -- because of his direct involvement in the TAAMS project, will likely be a witness in NAID's case against the Department. As a sister circuit has made plain, "conflicted advisors who participate or influence a judge

require[] the judge's disqualification" under § 455(a), "as distinct from an expert or other assistant to the judge who is disinterested and non-conflicted." *In re Kensington Int'l Ltd.,* 368 F.3d 289, 311 (3d Cir. 2004).

What is more, Balaran's employment of Smith raises the specter of "selection bias" which, as we held *In re Brooks*, necessitates his disqualification under § 455. *See* 383 F.3d at 1046. An impartial observer apprised of the facts would reasonably believe Balaran's reliance upon Smith for documents and other sources of information likely "color[ed] the way in which he approach[ed] his task, and ultimately his reports and recommendations to the district court." *Id.* Indeed, a reasonable observer would be hard-pressed to conclude otherwise for, as the plaintiffs concede, Balaran hired Smith to help in obtaining documents and information upon which Balaran could assess NAID's allegations of misconduct against the Department.

Nor would a reasonable observer see any justification for Balaran's conduct. If Balaran needed Smith's help in identifying and analyzing documents, then at the very least Balaran immediately should have disclosed the arrangement to the Department. Interior's counsel had invited Smith to assist in Balaran's initial inspection because his knowledge of the administrative record would be helpful to the Department in meeting its obligation to produce the relevant documents; for Balaran then to hire and pay Smith "retroactive" to the date of that inspection therefore seems particularly suspect. Worse still, after Balaran's initial inspection, Interior's counsel was not present to dispute anything Smith was telling Balaran. It is difficult to imagine a more biased way of conducting and reporting upon an investigation, save perhaps by permitting Smith actually to write the report. In fact, having selected the exhibits upon which the report was based, Smith might as well

have written it.[*]

C. Suppression of the Special Master's Reports

The plaintiffs maintain that even if Balaran was disqualified pursuant to § 455(a) prior to his resignation -- as we have now so held -- suppression of his reports is "unnecessary." To this end they say "*none* of the three reports targeted by [Interior] has even been adopted by the District Court -- much less acted upon to the [Department's] detriment." The plaintiffs also argue Interior could have moved to exclude Balaran's reports and findings pursuant to Federal Rules of Civil Procedure 53(g) (party may file objections to master's report) and 26(c) (party may move for protective order preventing disclosure of specific documents or information). A writ of mandamus, the plaintiffs contend, being an extraordinary remedy, is simply not required in order to afford the Department the relief it seeks.

Interior responds that "a party confronted with adverse reports from a biased judicial officer is not required to litigate the merits of each of their findings and conclusions, but may properly obtain vacatur of the reports if grounds for disqualification are established." The Department also maintains Rules 53 and 26 are of little use now because the district court has already rejected its argument that Balaran should have been disqualified.

We believe suppression of Balaran's reports is warranted and indeed necessary. As we noted *In re Brooks*, "selection bias" does not necessarily manifest itself in the record; it may

---

* Because we hold that Balaran was disqualified from the proceeding pursuant to § 455(a) upon his hiring of Smith, we need not reach the question whether Balaran also exhibited the requisite "personal bias" for disqualification pursuant to § 455(b)(1).

derive from "information that leave[s] no trace in the record." 383 F.3d at 1046 (internal quotation marks omitted) (alteration in the original). Balaran's reliance upon Smith in choosing which documents to consider and, by implication, which documents not to consider, would lead "one fully apprised of the surrounding circumstances," *Cobell*, 334 F.3d at 1143, to conclude Balaran's interim report was likely affected by selection bias; Smith obviously was not a disinterested source, and his input was received *ex parte* and therefore untested by the adversary process.

Because Balaran was disqualified from proceeding once he hired Smith, his subsequent work product -- including the April 2003 interim report of investigation and the two site-visit reports that followed -- must be suppressed. If those reports have not been used against the Department and are not presently part of the record before the district court, then so much the better; only suppression can ensure neither the plaintiffs nor the district court will rely upon the reports in the future, to the detriment of the "public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

## III.  Conclusion

Upon his hiring Smith, Balaran's "impartiality might reasonably [have been] questioned."  28 U.S.C. § 455(a). Therefore, we grant Interior's petition for a writ of mandamus and order the suppression of the three disputed reports Balaran submitted to the court after he hired Smith.  They shall "be stricken from the district court's records" and given "no legal effect." *Gardiner v. A.H. Robins Co.,* 747 F.2d 1180, 1183 (8th Cir. 1984) (striking from record reprimand of counsel and related comments made by judge disqualified for bias).

*So ordered.*