**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**MCI TELECOMMUNICATIONS CORPORATION,**
Defendant.

**No. Civ 96–2251 PHX EHC.**

United States District Court,
D. Arizona.

Jan. 16, 1998.

Mary Joleen O'Neill, Laurie E. Eiler, Kelly Marie Humphrey, Equal Employment Opportunity Commission, Phoenix, AZ, for Equal Employment Opportunity Commission.

Jane Elizabeth Reddin, Barbara Alice Hoerner, Lewis & Roca, Phoenix, AZ, for MCI Telecommunications Corporation.

## ORDER

CARROLL, District Judge.

The Equal Employment Opportunity Commission ("EEOC") brings this action claiming that MCI failed to provide wheelchair-accessible transportation to an off-site company event for John Grack, a wheelchair-bound employee, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. The EEOC alleges that MCI did not "reasonably accommodate" Grack's disability in a manner that would enable him to enjoy equal benefits and privi-

leges of employment as are enjoyed by non-disabled employees. Presently before the Court is MCI's motion for summary judgment. (dkt.26). For the reasons set forth below, the motion will be denied.

## I. Background

John Grack suffers from muscular dystrophy and is confined to a wheelchair. On January 3, 1994, Grack was hired by MCI as a telephone salesperson. While Grack was still in training,[1] MCI announced that it was holding an off-site "rollout" at the Arizona Biltmore Hotel on January 14, 1994 to announce new programs, bonus structures, and sales incentives for the upcoming quarter. The event was mandatory for all new employees/trainees and they were expected to travel to and from the event on charter buses that would be provided by MCI on the day of the event.

Grack approached Rachelle Simmons (now DeVecchio), the supervisor/trainer for the training class, to discuss his transportation needs for the off-site rollout. Also present were two trainers-in-training, Juan Munoz and Rick Sekersky. Grack wanted to make sure that a wheelchair-accessible bus would be available. Otherwise, he wanted to make sure that he had alternative transportation to and from the rollout.[2] Simmons, Munoz and Sekersky told Grack that they would check into it. This conversation took place on January 12, 1994, two days prior to the rollout.

The following day, Simmons assured Grack that MCI had addressed his concerns regarding transportation to the rollout and that the matter was resolved. Grack understood Simmons as saying that MCI would provide a wheelchair-accessible bus.

On the day of the event, however, neither of the two buses that were waiting to take the new employees to the rollout were wheelchair accessible. The steps of the waiting buses were too narrow for the wheelchair. There was also no alternative transportation, such as Dial–A–Ride or a wheelchair-accessible van, waiting for him in the parking lot.

Realizing that there was a problem, Munoz and Sekersky asked Grack whether they could carry him onto the bus. Grack replied that it would embarrass and humiliate him to be carried onto the bus. The trainers then inquired whether lifting Grack would cause any physical harm, to which Grack replied that it would not. The trainers proceeded to carry Grack onto the bus and to store his wheelchair in the luggage compartment.[3]

When the bus arrived at the Biltmore, the trainers carried Grack off the bus. While there, Grack was asked by Diane Gramze, Training Manager for MCI, whether he wanted alternative transportation for the return trip. Perhaps sarcastically, Grack replied: "I've already been embarrassed. I can't be embarrassed any more. Just go ahead and load me on the bus." At the end of the rollout, the trainers again carried Grack on and off the bus.

On the following Monday, Grack contacted Susan Laurence, MCI human resource specialist, to discuss the problem from the previous week. After speaking with the trainers, Grack and Susanne Austin, the individual who was in charge of making the transportation arrangements to the rollout, Laurence told Grack that "they sent the wrong bus." This is the only explanation that Grack has ever received from MCI regarding the incident.

## II. Discussion

### A. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. MCI requires all new employees to participate in a two-week training course, during which the new employees learn about various MCI services and are trained in sales techniques.

2. According to Grack's deposition, he suggested that MCI contact Dial–A–Ride or a number of cab companies which have wheelchair-accessible

vans in case MCI could not get a wheelchair-accessible bus.

3. MCI alleges that Grack consented to the trainers carrying him onto the bus. By contrast, the EEOC asserts that Grack did not want to be carried at all, but felt pressured into allowing Munoz and Sekersky carry him onto the bus.

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982).

Once the moving party has presented evidence which, if undisputed, would be a basis for a directed verdict at trial, the burden then shifts to the non-moving party to show the existence of a genuine issue for trial. *Anderson,* 477 U.S. at 250. The non-moving party cannot simply rely on the pleadings, but must present sufficient evidence to establish any essential elements of a claim. *Id.* at 251. There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or is not sufficiently probative, summary judgment is proper. *Anderson,* 477 U.S. at 249–50. When faced with a motion for summary judgment, the evidence before the court "must be viewed in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. Failure of Make Reasonable Accommodations

■ Under Title I of the ADA, a covered employer generally may not discriminate against an otherwise qualified individual on the basis of a disability. 42 U.S.C. § 12112(a). To state a *prima facie* case of discrimination under the ADA, the EEOC must show that Grack is (1) a qualified individual (2) with a disability (3) who suffered

an adverse employment action because of his disability. *Cooper v. Neiman Marcus Group,* 125 F.3d 786, 790 (1997); *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1353 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997).

■ Defendant concedes that the first two elements have been established: Grack is a qualified individual with a disability. Thus, the sole contested issue in this case is whether Grack suffered an adverse employment action because of his disability. To rephrase the issue in the language of the Title I of the ADA: Did MCI discriminate against Grack on the basis of Grack's disability in regard to "the hiring, advancement, or discharge of employees, employee compensation, job training, [or] other terms, conditions, and privileges of employment?"[4] 42 U.S.C. § 12112(a).

■ As defined by the ADA, "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," except where the accommodation would place undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); *Vande Zande v. State of Wisconsin Dep't of Admin.,* 44 F.3d 538, 542 (7th Cir.1995). As the wording of the statute suggests, the ADA places an affirmative obligation upon an employer to accommodate an employee's known disabilities; the failure to do so is actionable under the ADA as "discrimination." *Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 706 (5th Cir.1997); *Miller v. Runyon,* 77 F.3d 189, 192 (7th Cir.1996) *See also Buckingham v. United States,* 998 F.2d 735 (9th Cir.1993) (decided under Rehabilitation Act).[5]

■ A "reasonable accommodation" is an accommodation that would enable an employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by employees who are not disabled. 29

---

**4.** In its reply, Defendant appears to imply that the two questions as stated are somehow different. *See Reply,* at 9. As a practical matter, there is no difference. Any "adverse employment action" motivated by a person's disability (or race, sex, etc.) is, by definition, discrimination. Any distinction is purely pretextual.

**5.** Case law decided under the Rehabilitation Act is helpful in interpreting the ADA. See *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 n. 3 (9th Cir.1995), *cert. denied,* 516 U.S. 1048, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996).

C.F.R. Part 1630, App. § 1630.2(*o*).[6] Clearly, the right not to be singled out, embarrassed and humiliated by one's employer as a result of a disability is a benefit or privilege of employment.

Defendant argues that carrying Grack on and off the bus, and in the process embarrassing and humiliating him, was a reasonable accommodation *as a matter of law* under the circumstances, because Grack failed to offer an alternative at that time. Defendant's reasoning, however, suffers from one fatal flaw: it presupposes that MCI ordered a wheelchair-accessible bus for the event and that, for reasons entirely beyond MCI's control, the wheelchair-accessible bus simply did not show up.

Two reasonable inferences may be drawn from the absence of wheelchair-accessible transportation, Either MCI made the appropriate arrangements and the bus company "dropped the ball," in which case MCI is without fault, or MCI never made the necessary arrangements, in which case MCI failed to make reasonable accommodations in violation of the ADA. While MCI contends that the former inference is the only one that may be drawn from the evidence, the Court does not agree. The evidence, if construed in the light most favorable to the EEOC, presents a question of fact as to why the buses that arrived on January 14, 1994 were not wheelchair-accessible.

In support of its motion for summary judgment, Defendant offers substantial evidence to show that MCI made the necessary arrangements for a wheelchair-accessible bus in a good faith attempt to accommodate Plaintiff's disability. Simmons and Sekersky both testified during their depositions that they contacted Susanne Austin regarding the need for a wheelchair-accessible bus or van. In addition, Diane Gramze, the MCI training manager, testified that she also coordinated with Austin to have wheelchair-accessible transportation.

Austin, however, is unable to remember who at MCI contacted her about the need for special transportation or how she was contacted. Furthermore, Austin states that she contacted the bus company shortly after being informed of the need for special transportation, but cannot remember with whom she spoke or even whether that person was male or female. She only remembers that it was not her "usual contact." However, when asked for the name of her usual contact, she could not remember it.

Records from the bus company do not support Austin's testimony. The records indicate that a request was made for items such as confetti and silly string, yet do not mention that MCI also requested wheelchair-accessible transportation.[7] Nor do bus company records reflect that Austin subsequently called to discuss the problem after the rollout event, also contrary to her testimony.[8]

MCI itself has no written records that Austin or anyone else ever contacted the bus company to make arrangements for a wheelchair-accessible bus. MCI also has no written records to support Austin's assertion that she subsequently called the bus company to complain after the rollout. In short, neither the bus company nor MCI's own records corroborate MCI's assertion that arrangements were made for a wheelchair-accessible bus. On the contrary, bus company records suggest that no such arrangements were made. Clearly, whether MCI ever arranged

---

**6.** There are three categories of reasonable accommodations: (1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable employees with disabilities to enjoy benefits and privileges equivalent to those enjoyed by non-disabled employees. 29 C.F.R. Part 1630, App. § 1630(*o*). Only the third category is relevant to this case.

**7.** Debbie Marcum, charter sales manager for Arrow bus lines, testified that it was standard operating procedure to note on an order form a request for a wheelchair-accessible bus. She stated that it was very unlikely that Arrow would neglect to make a notation as to the need for wheelchair accessibility, because Arrow did not have wheelchair-accessible buses at the time and would have had to specially arrange for one through a subcontractor.

**8.** Marcum also testified that the normal procedure when receiving a customer complaint was to make a note of the complaint on the invoice. MCI's invoice contains no such notation.

for a wheelchair-accessible bus is a material question of fact. Accordingly, summary judgment would not be appropriate.

■ The only proof offered by MCI in support of its contention that arrangements were made for a wheelchair-accessible bus is the testimony of Susanne Austin. The Court agrees with the EEOC that Austin's credibility is at issue in this case, particularly considering her faulty memory and the lack of corroborating evidence. Credibility determinations should be made by the trier of fact, not the Court on a motion for summary judgment. *Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202.

Defendant asserts that it is entitled to summary judgment because it relies exclusively on the testimony of the charging party, John Grack. This argument is without merit. The fact that the charging party believed MCI supervisors to be "sincere" and "concerned" for his well-being does not establish MCI's sincerity and concern as a matter of law. Moreover, it also does not establish that MCI did, in fact, make the necessary accommodations for Grack's disability. That information is within the sole knowledge of Susanne Austin, not John Grack.

■ Turning to the actual accommodation that was made in this case, carrying Grack onto and off of the bus, the EEOC argues that carrying a wheelchair user on and off inaccessible transportation is not a reasonable accommodation under the ADA. By contrast, MCI argues that it is a *per se* reasonable accommodation under the circumstances.

The trier of fact might very well conclude that MCI never ordered the wheelchair-accessible bus. In which case, it is also conceivable that the trier of fact could logically conclude that carrying Grack onto and off of the bus was not a reasonable accommodation. In any event, issues of fact exist as to wheth-

er carrying Mr. Grack was a reasonable accommodation under the circumstances, the feasibility of other accommodations, whether MCI was aware of any other accommodations, and whether Mr. Grack could have suggested other accommodations at that time.[9] In light of these factual issues, summary judgment would not be appropriate.

The EEOC contends that summary judgment is also inappropriate considering MCI's refusal to acknowledge in writing its ongoing obligations under the ADA as well as to provide written assurances that wheelchair-accessible transportation would be available for all future off-site events. This issue need not be addressed, given the Court's ruling on the motion for summary judgment.

Finally, MCI argues that the Court should grant summary judgment because damages are not available to the EEOC. Pursuant to 42 U.S.C. § 1981a(a)(3), damages are not available "where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation...." MCI contends that it has demonstrated good faith efforts to make reasonable accommodations and, therefore, cannot be liable for damages.

■ MCI's argument, however, again assumes that the bus company, and not MCI, was entirely at fault for the absence of wheelchair-accessible transportation on January 14, 1994. As discussed above, the trier of fact could reasonably conclude from the evidence that MCI essentially "dropped the ball," as the EEOC contends, by failing to make the necessary transportation arrangements. If so, then the jury could also reasonably conclude that MCI failed to undertake "good faith efforts ... [to] make a reasonable accommodation."[10] Thus, MCI's

9. MCI's earlier announcement that employees were expected to travel to and from the rollout event on the buses that were provided creates a question of fact as to whether Grack would have been permitted to travel in his own van or other transportation. The Court notes that on January 12, 1994, Grack suggested that MCI contact Dial–A–Ride or a cab company. Thus, he had

previously advised MCI of at least two feasible alternatives.

10. MCI suggests that § 1981a(a)(3) focuses solely on the interactive process between the employer and the employee, regardless of what happens beyond that. This is a troubling proposition. According to this line of reasoning, damages are not available so long as the employer talks to the

**732**

liability for damages rests entirely on a disputed question of fact and, as a result, cannot be resolved on a motion for summary judgment.

Accordingly,

**IT IS ORDERED** denying Defendant's motion for summary judgment. (dkt.26).

employee. However, the statute clearly states that talk alone is not enough. A "good faith effort ... to identify **and make** a reasonable accommodation" is not satisfied merely through communication with the employee. It could hardly have been the intent of Congress to create such an obvious "escape hatch" from liability. Rather, the employer must make a good faith effort to implement the reasonable accommodation before § 1981a applies.