**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KAREN S. DEAL,

        Plaintiff - Appellant,

    v.

CANDID COLOR SYSTEMS, an
Oklahoma Corporation,

        Defendant - Appellee.

No. 97-6298

(W.D. Okla.)

(D.C. No. 96-CV-1058)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **MAGILL**,[**] and **LUCERO**, Circuit Judges.

      Karen Deal brought this suit against her former employer, Candid Color Systems

(CCS), alleging that CCS constructively discharged her in violation of the Americans

with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. The district court granted

summary judgment to CCS, holding that Deal failed to meet each of the elements of a

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The Court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

prima facie case for a claim of discrimination under the ADA. Deal now appeals, and we affirm.

## I.

Deal began working for CCS as a full-time employee in 1993. Deal worked in the film library, where she filed and retrieved film and divided large rolls of film into individual customer orders. In 1995, Deal was diagnosed with breast cancer. After surgery in April 1995, and because of the pain caused by a continuing regimen of chemotherapy, CCS permitted Deal to work whenever she felt well. Deal provided little or no advance notice of her absences, and worked only sporadically during the months of July, August, and September 1995. Although Deal worked at CCS for only 28.3 hours during this period (an average of slightly over two hours per week), on July 10, 1995, Deal accepted a second, full-time job caring for an elderly woman, where she logged more than 300 hours during the same period. CCS was unaware of Deal's second job until after this suit was filed.

As Deal recognized, fall was CCS's busiest season due to increased orders connected with the beginning of the school year and the fall sports season. With fall approaching, Deal's supervisor, Stacy Ingram, determined that someone was needed to carry out Deal's duties on a full-time basis. At a September 19, 1995 meeting, Ingram explained to Deal that Deal had to begin working a fixed part-time schedule so that CCS

could coordinate Deal and other employees to ensure completion of Deal's duties. Ingram told Deal that she would be reclassified as a part-time employee and that Deal could return to full-time employment whenever she felt able. Deal was surprised that she could no longer work whenever she felt able, but ultimately agreed to work on Mondays, Wednesdays, and Fridays. Deal did not tell Ingram that, due to her treatment, she would be unable to work the fixed schedule, but Deal never returned to work after the meeting. After missing several scheduled work days without notifying CCS, Deal was terminated on September 29, 1995.

After obtaining a right-to-sue letter from the Equal Employment Opportunity Commission, Deal filed this suit against CCS. Deal claimed that, because she was disabled and could perform the essential functions of her position if accommodated by being allowed to work whenever she felt able, CCS's imposition of a fixed part-time schedule amounted to a constructive discharge in violation of the ADA. After discovery, the district court granted summary judgment in favor of CCS. Deal appeals.[1]

## II.

We review the district court's grant of summary judgment de novo. See White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995). "If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper." Id.

---

[1]CCS has moved for damages and costs on appeal. We deny CCS's motion.

To establish a prima facie case under the ADA,

> "a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA, (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation, and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability."

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted). If a plaintiff fails to prove any element of her prima facie case, summary judgment is proper.

In this case, we need only address Deal's qualification for her position. To determine whether a person is qualified under the ADA:

> "'First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if . . . we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.'"

Smith v. Midland Brake, Inc., 138 F.3d 1304, 1308 (10th Cir. 1998) (quoting White, 45 F.3d at 361-62).

A job function is essential if eliminating it "fundamentally alters the nature of the job[], something the ADA does not require an employer to do." White, 45 F.3d at 362. Deal does not claim that she could have performed her job functions anywhere other than at the CCS workplace. Work attendance, thus, was essential for Deal's job because she could not complete her job functions during her frequent absences from the workplace. See Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994) ("[e]xcept in the

unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise" (quotations omitted)).

When a job's essential functions cannot be performed without accommodation, an employer must provide those accommodations that are reasonable. Accommodations are reasonable unless they "would impose an undue hardship on the operation of the business" by "requiring significant difficulty or expense." 42 U.S.C. §§ 12111(10)(A), 12112(b)(5)(A). A reasonable accommodation may include a "part-time or modified work schedule[]." 29 C.F.R. § 1630.2(o)(2)(ii).

Deal argues that CCS should have reasonably accommodated her by permitting her to work whenever she was able, with little or no notice of her absences. CCS contends that it tried to accommodate Deal by permitting her to work a fixed part-time schedule, but that allowing Deal to work whenever she was able would have imposed an undue hardship on its business during the busy fall season. We agree. Because Deal was able to work so infrequently and sporadically, a second employee would be required to perform Deal's duties on all but those rare occasions when Deal could come to work. See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995) ("An accommodation that would result in other employees having to work harder or longer hours is not required.").

More importantly, because Deal provided little or no notice of her absences, a second employee would have to be scheduled to cover Deal's duties at all times. See Carr

v. Reno, 23 F.3d 525, 529 (D.C. Cir. 1994) (under Rehabilitation Act, plaintiff's "erratic (at best) attendance record and her inability to inform the [employer] when she could not attend" rendered plaintiff unqualified because the employer "could not function normally without having others do her work on a daily basis").  Such a burdensome accommodation is not required by the ADA.  See White, 45 F.3d at 362 ("the ADA does not require an employer to . . . reassign the employee to an occupied position [or] . . . create a new position to accommodate the disabled worker"); see also 29 C.F.R. pt. 1630, app. § 1620.2(o) (ADA does not require employer to provide an assistant who "would be performing the job for the individual with a disability rather than assisting the individual to perform the job").

Accordingly, Deal's prima facie case fails as a matter of law, and the district court's grant of summary judgment in favor of CCS is AFFIRMED.

Entered for the Court


Frank J. Magill
Senior Circuit Judge