Christy JEWELL, Plaintiff,

v.

**BLUE VALLEY UNIFIED SCHOOL DISTRICT NO. 229, Defendant.**

**Case No. 01–2350–JWL.**

United States District Court,
D. Kansas.

July 5, 2002.

Martin M. Meyers, Stephen C. Thornberry, The Meyers Law Firm, LC, Kansas City, MO, for Plaintiff.

Mark A. Ferguson, Tammy M. Somogye, Meredith Jayne Rund, Lathrop & Gage L.C., Overland Park, KS, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant alleging that defendant, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., failed to accommodate her disability. This matter is presently before the court on defendant's motion for summary judgment (doc. # 64). As set forth in more detail below, the court grants defendant's motion and dismisses plaintiff's complaint in its entirety.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff is certified by the Kansas State Board of Education to teach elementary education. In May 1994, defendant hired plaintiff as a kindergarten teacher and she began her teaching duties in the 1995–1996 school year at Harmony Elementary School. In May 1996, at the end of her first year of teaching in the district, plaintiff sustained an on-the-job injury to her left wrist and hand while she was moving large tables in a classroom. She re-injured her left wrist and hand in May 1997, at the end of her second year of teaching at Harmony Elementary School. This subsequent injury occurred when a large group of first graders essentially pinned plaintiff in a doorway as they were moving through it. During her third year at Harmony, plaintiff had surgery on the ulnar nerve in her left arm in October 1997. Following surgery, plaintiff missed numerous days of work and a long-term substitute teacher filled in for plaintiff during her extended absence.

For the school year beginning in 1998, plaintiff requested and received a transfer to Sunset Ridge Elementary School, a brand new school in the district. Just a few weeks into the school year, plaintiff required two back-to-back surgeries (hemorrhoidectomies) to have an anal fissure removed. The fissure had developed because of severe constipation problems plaintiff had from the narcotics that she was taking for her left-arm injuries. Following these surgeries, plaintiff requested and received six weeks of leave under the Family and Medical Leave Act. When plaintiff returned from leave in October 1998, the district wanted to place plaintiff in a long-term substitute position but plaintiff rejected this assignment because

she believed that it would have been harder on her hand than a regular classroom position. According to plaintiff, at that time it was nearly impossible for her to perform any manual tasks that required the use of her left hand and she was afraid that the substitute teacher position would require her to carry books or papers, grade papers, cover lunchroom or recess duties, or control the behavioral problems of students older than kindergarten age. After rejecting the long-term substitute position, plaintiff accepted a position at the district's administrative office to help with a reading grant. The job entailed working with reading passages, editing, and writing out questions. According to plaintiff, she was able to perform this office job without any trouble. Plaintiff finished out the remainder of the 1998–99 school year performing light clerical work in the district office.

In April 1999, plaintiff expressed an interest in a kindergarten teaching position for the 1999–2000 school year. Thereafter, plaintiff signed a contract for the following school year and was slated to teach kindergarten at Blue River Elementary School beginning in September 1999. On July 29, 1999, plaintiff notified Jim Payne, the district's Executive Director of Human Resource Services, that the condition of her left arm had worsened, that she was most likely going to undergo a second surgery on her arm in the upcoming months and that she could not start the school year as a kindergarten teacher. On several occasions during the month of August, plaintiff met with Mr. Payne to discuss possible accommodations for plaintiff's injury.

Based on his belief that a position with older children would be more manageable for plaintiff, Mr. Payne offered plaintiff several teaching alternatives, including an eighth grade teaching position at Overland Trail Middle School. Plaintiff accepted this position with the understanding that she would not begin the assignment until after her surgery and recovery period. In the meantime, a long-term substitute teacher was placed in the position.

Throughout August and September 1999, plaintiff had numerous discussions with Mr. Payne and Steve Davis, the principal at Overland Trail Middle School, concerning specific accommodations that the district could provide to enable plaintiff to return to the classroom following her surgery and recovery period. During these discussions, plaintiff expressed to Mssrs. Payne and Davis that she needed help lifting, grading papers, and recording grades in the grade book.[1] Mr. Davis concluded that the school's custodial staff could assist plaintiff before and after school with respect to any carrying or lifting that plaintiff needed. The custodial staff was also directed to go to plaintiff's classroom over the lunch hour to ascertain whether plaintiff needed any additional assistance. It was also understood that if plaintiff needed the assistance of a custodian during the course of the school day, she could contact the main office and someone in the office would reach a custodian via walkie talkie communication.

In addition to assistance from the custodial staff, Mr. Davis concluded that paraprofessionals in the building could assist

---

1. Because the court assumes without deciding for purposes of defendant's motion that plaintiff is disabled within the meaning of the ADA, it need not spend a great deal of time discussing the nature and extent of the injury to her left arm. Suffice it to say that plaintiff has severely limited use of her left arm and hand. It is undisputed, for example, that plaintiff cannot lift anything weighing more than one pound with her left hand; she cannot grasp anything with her left hand; and she has to avoid any physical contact to her left arm and hand. Plaintiff, however, is right-hand dominant and has no restrictions on the use of her right arm and hand.

plaintiff during the course of the school day.[2] Finally, Mr. Davis advised plaintiff that the district was attempting to hire an additional full-time paraprofessional and that this individual could provide some assistance to plaintiff on a daily basis. At no time did the district promise to assign a paraprofessional to work exclusively with plaintiff in the classroom and plaintiff acknowledges that the district was not planning on hiring a paraprofessional exclusively for plaintiff's use. Rather, it was agreed only that plaintiff would receive custodial and paraprofessional assistance as often as possible. Mssrs. Davis and Payne thought that these particular accommodations were reasonable and hoped that they would enable plaintiff to do her job.

Plaintiff began the 1999–2000 school year doing light clerical work in the district office. She continued in this position until her second surgery, which took place on September 28, 1999. Following her second surgery, plaintiff requested and received a medical leave of absence until October 25, 1999, when she was released to return to light duty work. She spent a few days working in the administrative office at Overland Trail Middle School to permit the substitute teacher for her eighth grade class to finish out the grading period. Beginning November 1, 1999, plaintiff, having agreed to the accommodations described by Mssrs. Payne and Davis concerning custodial and paraprofessional assistance, returned to the classroom to teach eighth grade. She stayed for only a few weeks, leaving her assignment on December 3, 1999 as a result of defendant's alleged failure to accommodate reasonably her disability.

When plaintiff returned to the classroom, she discovered that she needed a great deal of assistance. In fact, plaintiff testified in her deposition as follows:

Q: What tasks did you need this paraprofessional to do when you were in the eighth grade classroom?

A: Needed them to move desks, move books, help kids find things in books. The books that we used were so large, I could not handle them. Move equipment, slide projectors, the overheads, carts of books. I needed a lot of help grading. I had three classes of social studies and two of English. Most of the [papers] that the kids turned in were two to three pages front and back of writing and full sentences that had to be graded nightly, which I could not do without help.

Q: So did you need an assistant to go home with you or meet with you to grade-to actually grade the papers?

A: I needed someone-the way the schedule was set up, the last two hours of the day were my planning time. *So that person would have needed to be there for the last two hours of the planning time* for sure to help me be able to grade the papers and record all of the grades.

(Emphasis added). Plaintiff further testified that she needed a paraprofessional in her classroom between classes to move tables and books. Finally, plaintiff testified that she needed a paraprofessional to be available at all times-essentially at a moment's notice-to come to her classroom to move equipment and materials while plaintiff was teaching. As plaintiff explained in her deposition:

**2.** Paraprofessionals work as assistants to teachers in the classroom. Typically, a paraprofessional is brought into the classroom to assist the teacher in providing instructional leadership to a class when the number of students in the classroom has grown beyond the number of students suitable for a single classroom teacher to handle.

A: I asked for someone to be available full-time, yes.

Q: And what does that mean to you?

A: It means that if I need something moved, that I need someone to be able to come down and move it. *Not 20 minutes later.*

(Emphasis added). At another point in her deposition, plaintiff reiterated what she meant by having a paraprofessional available to her full-time:

A: I needed someone that would be available when I needed them.

Q: And how was-what do you mean by available when you needed them?

A: I couldn't-if I needed someone to move something, I needed someone who would be-who would be available to come and move what I needed ... *at that time.*

\* \* \* \* \* \*

Q: And by available, do you mean in your classroom available or would it be sufficient to call them down?

A: It would have been fine to call them down as long as they could have come.

(Emphasis added). It is undisputed that plaintiff did not have a paraprofessional available to her to the extent that she apparently required.

According to plaintiff, during her first week of teaching in November 1999, she did not have anyone to assist her until Friday of that week. On Friday, two different paraprofessionals came to her classroom, for fifteen minutes each, in an effort to assist plaintiff. Plaintiff testified, however, that this particular assistance didn't help because it took seven minutes to try to explain to them what needed to be done, which was class time which was taken away from the students. And then they were only there for the rest of the 15 minutes and so nothing was done. And then later on in the day when another person would come in, I would have to explain to them what needed to be done, which took away from that class period of time and that group of kids. And so, no it wasn't helpful.

Thus, for purposes of efficiency and consistency, plaintiff did not want to have several different paraprofessionals assisting her at various times; she wanted one designated person to be her assistant. According to plaintiff, she wanted the district to hire (and believed that they had promised to hire) an individual "whose main job would be to be my assistant and then [that person] would be used elsewhere in the building, so that that person knew how to do the things so that when they were there it wouldn't have to be explained each time."

Over the next few weeks, plaintiff, on numerous occasions, expressed her concern that the school had not hired another paraprofessional[3] and had not made a paraprofessional available to plaintiff at all times. It is uncontroverted, however, that the school was using at least 4 of its 5 paraprofessionals to cover as much of plaintiff's working day as possible. In fact, on one specific occasion, plaintiff refused to come to work because Mr. Davis was unable to cover her entire work day with paraprofessional assistance; he was able to cover only four of plaintiff's five class periods.[4] In that regard, Mr. Davis left a voice mail message for Mr. Payne with the following undisputed contents:

I received a message from Christy Jewell. She cannot come and sit in classroom without a full time para. I do

---

**3.** It is unclear from the record whether the school simply did not hire another paraprofessional or whether it did hire someone who then failed to show up for work.

**4.** Each teacher at Overland Trail Middle School had five class periods and two planning periods, for a total of seven periods.

have the first four hours covered tomorrow, new para has not reported to work yet that I planned on covering class with. I have classroom para covering class. *I can handle four hours but Christy is adamant on having a full time para and I cannot cover entire time.*

(Emphasis added). On another occasion, Mr. Davis left the following voice mail message for Mr. Payne, the contents of which are undisputed:

> [Plaintiff] did leave during sixth and seventh hour today because she says she cannot be in the room by herself or workman's comp. won't cover and be paid, *so basically after fifth hour, where I have coverage to, she left.* Sixth and seventh are planning periods where there are no students and we covered last hour of advisement, where there are just a few kids. *I can cover the first five hours with no problem.* I talked to a para this afternoon, which I am trying to hire. She (Christy) is just holding the line, she will not be in classroom during planning time without kids. *She won't be in the classroom without some kind of para assistance.*

(Emphasis added). Unable to obtain the kind of paraprofessional help that she needed to perform her job, plaintiff left her teaching assignment on December 3, 1999.

Upon leaving her job, plaintiff left a voice mail message for Mr. Payne in which she explained to him that she could "not be in the classroom any longer." Plaintiff further stated:

> I have been there against doctor's orders and have tried my best to work with you guys on getting a para after several weeks. Nothing has been done yet and my arm is at the point where I cannot do anything right now and I have to try to reheal. *I will not be in the classroom. Please let me know when a*

*full-time para is obtained* and I can go back per the doctor's orders or let me know if there is something that you want me to do, or somewhere else that you want me to go. For a couple of days I will need to reheal, Monday and maybe Tuesday, depending on how Monday goes. After that time, I need to know where to report to again. Thank you.

(Emphasis added). On December 21, 1999, plaintiff left another message for Mr. Payne in which she reiterated that her doctor "is not willing to allow me in the classroom without para assistance for the duration that I am there. If the school's position changes on this, let me know because I want to work."

At some point thereafter, plaintiff met with Mr. Payne to discuss other available positions in the district. There were no positions on the vacancy list that plaintiff was able to perform. Plaintiff has been on a medical leave of absence since December 1999 but continues to maintain that she will return to work "as soon as her doctor's requirement for a full-time para has been fulfilled."

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v.*

*Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City*

*of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Discussion

■ In the pretrial order, plaintiff claims only that defendant discriminated against her in violation of the ADA by failing to make reasonable accommodations for her disability. To establish a prima facie case with respect to this claim, plaintiff must demonstrate that she had a disability within the meaning of the ADA; that defendant had notice of her disability; that with reasonable accommodation she could perform the essential functions of her position;[5] and that defendant refused to make such accommodations. *See Spielman v. Blue Cross & Blue Shield of Kansas, Inc.,* 2002 WL 524549, at *4, 33 Fed. Appx. 439 (10th Cir.2002) (citing *Rhoads v. F.D.I.C.,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001)); *see also Selenke v. Medical Imaging of Colo.,* 248 F.3d 1249, 1261–63 (10th Cir.2001) (discussing failure-to-accommodate claim).

In its motion, defendant contends that it is entitled to summary judgment on plaintiff's claim because plaintiff has failed to set forth sufficient facts demonstrating that "with reasonable accommodation she could perform the essential functions of

---

**5.** It is undisputed that plaintiff could not perform the essential functions of her job without some type of accommodation.

her position."[6] Specifically, defendant contends that plaintiff's request for a full-time paraprofessional to be available to her at all times is simply not reasonable as a matter of law. In response, plaintiff urges that the focus of this case is not whether a full-time assistant is a reasonable accommodation, but whether defendant provided plaintiff with the accommodations that it promised to provide and that it conceded were reasonable. Stated another way, plaintiff contends that defendant promised to provide certain accommodations (*i.e.*, assistance from custodians; assistance from current paraprofessionals in the building; and assistance from a new full-time paraprofessional), that defendant conceded that these accommodations were reasonable, and that defendant failed to fulfill its promise. According to plaintiff, then, summary judgment must be denied. As set forth more fully below, the court rejects plaintiff's argument and concludes that summary judgment in favor of defendant is appropriate.

### A. The Specific Accommodations Promised by Defendant

In an effort to enable plaintiff to perform the essential functions of her eighth-grade teaching position, defendant promised to provide plaintiff with some assistance from custodial staff, some assistance from current paraprofessionals in the building, and some assistance from a new paraprofessional position that the school was trying to fill. Mr. Payne testified that he believed that these particular accommodations were reasonable and it was his hope that plaintiff would be able to perform her job with these accommodations. It is undisputed, however, that the parties had no discussions whatsoever concerning the specific amount of time or number of hours per day that these individuals would be available to assist plaintiff. It is further undisputed that at no

---

**6.** Defendant also contends that it is entitled to summary judgment for a host of other reasons, including that plaintiff is not substantially limited in any of her major life activities; that plaintiff's requested accommodation, even if reasonable, would impose an undue hardship on defendant; and that plaintiff is precluded from recovering under the ADA because she failed to engage in the interactive process required by the ADA.

In the alternative, defendant contends that, at the very least, plaintiff is not entitled to recover compensatory damages because defendant made a good faith effort to identify and make a reasonable accommodation. *See* 42 U.S.C. § 1981a(a)(3) (in cases where the discriminatory practice involves the provision of a reasonable accommodation, neither compensatory nor punitive damages may be awarded "where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation ....").

The court declines to address the merits of these arguments in light of its conclusion that plaintiff otherwise fails to establish a prima facie case with respect to her failure-to-accommodate claim.

The court does, however, address one additional argument made by defendant in support of its motion. According to defendant, the court lacks subject matter jurisdiction over plaintiff's claim because she failed to exhaust the grievance procedures outlined in her union contract prior to filing her lawsuit. The argument lacks merit and is precluded by established Tenth Circuit precedent. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir.1998) (federal civil rights plaintiff is not required to exhaust her employer's internal grievance procedures before filing suit) (citing *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1453–54 (10th Cir. 1997) (no requirement that union employee exhaust grievance procedure which was provided in collective bargaining agreement); *Johnson v. Greater Southeast Community Hosp. Corp.*, 951 F.2d 1268, 1276 (D.C.Cir. 1991) ("A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court.")).

time did defendant promise to provide plaintiff with a paraprofessional who would be available to assist plaintiff at all times and at a moment's notice.

It appears from the record that plaintiff received very little (if any) assistance from the school's custodial staff. It is also undisputed that the school failed to fulfill its promise to hire a new full-time paraprofessional who would be able to provide some assistance to plaintiff. In fact, the only promise that the record suggests defendant did fulfill was its promise to provide plaintiff with assistance from current paraprofessionals in the building. In her papers, then, plaintiff contends that summary judgment must be denied because defendant failed to provide the accommodations that it promised to provide and that it conceded were reasonable.

Plaintiff's argument, however, ignores the very purpose of the ADA's accommodation requirement. The idea of accommodation is to enable an employee to perform the essential functions of his or her job. *Mathews v. Denver Post*, 263 F.3d 1164, 1168 (10th Cir.2001); *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1220 (10th Cir.1999) (noting that Tenth Circuit precedent refers to "reasonable accommodations" as "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job"); *see also* 29 C.F.R. § 1630.2 (defining reasonable accommodation to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances in which the position held or desired is customarily performed, *that enable a qualified individual with a disability to perform the essential functions of that position* ") (emphasis added). The record before the court demonstrates that even if defendant had fulfilled each of its promises concerning the assistance it would provide to plaintiff, plaintiff nonetheless would not be able to perform the essential functions of her job. Thus, defendant's failure to provide the promised accommodations has no bearing on plaintiff's ability to establish a claim for failure-to-accommodate under the ADA.[7]

The court begins with defendant's promise to provide custodial assistance before school, after school, and over the lunch hour. While the record suggests that this promise was unfulfilled, there is simply no evidence suggesting that such assistance would have enabled plaintiff to perform the essential functions of her job. In fact, plaintiff does not even appear to complain about defendant's failure to provide her with custodial assistance and she does not assert that she had difficulties before or

---

7. For these reasons, the legal analysis of plaintiff's claim is easily distinguished from the facts presented in the sole case cited by plaintiff in support of her argument, *EEOC v. MCI Telecommunications Corp.*, 993 F.Supp. 726 (D.Ariz.1998). In that case, the court denied the defendant's motion for summary judgment on the grounds that factual issues existed with respect to whether the defendant ever made arrangements (as it promised to do) to provide the plaintiff with wheelchair-accessible transportation to an off-site company event at which attendance was mandatory. *See id.* at 730. While defendant promised to provide such transportation to the plaintiff (who was wheelchair-bound), no such transportation was actually provided on the partic-

ular day and plaintiff had to be carried on to a non-wheelchair-accessible bus. *Id.* at 728. The court held that if in fact defendant never made the necessary arrangements, then it failed to make reasonable accommodations in violation of the ADA. *See id.* at 730. It was undisputed, however, that providing a wheelchair-accessible bus would have accomplished the goal of permitting plaintiff to enjoy benefits and privileges of employment equivalent to those enjoyed by his non-disabled coworkers. *See id.* at 728. By contrast, there is no evidence here that plaintiff would have been able to do her job if only defendant had provided the accommodations it promised to provide.

after school with lifting or carrying things. Similarly, there is no suggestion that plaintiff's apparent inability to remain in the classroom beyond December 3, 1999 stemmed even in part from a lack of assistance from the school's custodial staff. With respect to defendant's promise to provide "some" assistance from current paraprofessionals in the building, it is undisputed that this promise was fulfilled. However, plaintiff testified that this assistance did not help her because it took too long to explain what needed to be done. To the extent that plaintiff complains that these paraprofessionals did not provide her with enough time, defendant made no promises concerning any particular length of time that these paraprofessionals would be able to spend with plaintiff on any given day.[8] In any event, the undisputed facts demonstrate that, on at least one occasion, plaintiff had assistance from paraprofessionals during four out of five class periods and that she nonetheless refused to come to work because this level of assistance was inadequate to . enable plaintiff to do her job. On another occasion, plaintiff left work early because defendant had provided paraprofessional coverage for the first five periods of the day, but not for the sixth and seventh periods, which were plaintiff's two planning periods.

Plaintiff's real complaint, then, is that the district failed to hire a new paraprofessional who would be available to assist plaintiff at all times-as soon and as often as plaintiff demanded. But defendant never promised to provide such assistance to plaintiff. Defendant indicated only that it was attempting to hire a full-time paraprofessional who could provide additional assistance to plaintiff beyond what the current paraprofessionals were able to provide. There is no evidence in the record that defendant even remotely suggested that this new paraprofessional would spend a certain number of minutes or hours with plaintiff during the school day or that the new paraprofessional would be at plaintiff's beck and call at all times. So even if defendant had fulfilled its promise to hire a new full-time paraprofessional, there is no indication that this accommodation-to the extent promised by defendant-would have enabled plaintiff to do her job.

Finally, the record is devoid of evidence suggesting that defendant's fulfillment of all three promises, taken together, would have satisfied plaintiff. Contrary to plaintiff's contention, it is not significant that Mssrs. Payne and Davis believed that these three accommodations were reasonable and hoped that they would enable plaintiff to perform her job. The undisputed facts clearly demonstrate that plaintiff would not return to the classroom without a full-time paraprofessional available to her at all times and at a moment's notice. For this reason, it is irrelevant that defendant did not fulfill its promises to provide plaintiff with accommodations. The accommodations described by defendant in anticipation of returning plaintiff to the classroom after her surgery, as evidenced by plaintiff's own testimony, would not have enabled plaintiff to do her job. Thus, plaintiff's "unfulfilled promises" theory of recovery fails.[9]

8. The uncontroverted facts demonstrate that the demands on each paraprofessional's time were great, that there were no times when a paraprofessional would have nothing to do, that paraprofessionals were difficult to retain for a number of reasons, and that the school was, more often than not, seeking to hire paraprofessionals.

9. In any event, the court notes that plaintiff's theory is, at its core, a theory sounding in contract. While the court has not uncovered any cases suggesting that such a theory would be viable under the ADA, it has uncovered cases suggesting that such a theory is properly pled as a breach of contract claim. *See, e.g., Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1154 (10th Cir.1999) (evidence

## B. Plaintiff's Request Concerning Paraprofessional Assistance

█ Having rejected plaintiff's theory that her claim should survive simply because defendant failed to fulfill its promises of accommodation, the court turns to address what is, despite plaintiff's insistence otherwise, the heart of her complaint against the district-the district's failure to provide a full-time paraprofessional who would be available to plaintiff at all times. A reading of plaintiff's deposition testimony and the substance of the voice mail messages from both Mr. Davis and plaintiff reveal the following undisputed facts: Plaintiff needed paraprofessional assistance during both of her planning sessions in order to grade her papers and enter the grades in her grade book; paraprofessional coverage for four out of five class periods was insufficient to enable plaintiff to do her job; plaintiff needed paraprofessional assistance between classes; and plaintiff needed assistance at the time she requested it-not "twenty minutes later." Moreover, she needed such assistance from the same individual each day for efficiency purposes. In essence, then, plaintiff's testimony reveals that she needed, at least in her own mind, a full-time assistant in order to do her job. This is further supported by the contents of plaintiff's December 21, 1999 voice mail message to Mr. Payne wherein she expressly

stated that her doctor was not willing to allow her in the classroom "without para assistance *for the duration*" of the time that she was in the classroom.

This accommodation is not reasonable.[10] In fact, plaintiff does not even argue that this accommodation is reasonable.[11] The courts of appeals have consistently held that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his or her disability. *See Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632–33 (6th Cir.1999) (district court was correct in holding that the requested accommodation of having other workers assist plaintiff was not reasonable); *Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784, 788 (8th Cir.1998) (employer is not obligated under ADA to hire additional employees or reassign existing workers to assist plaintiff with her job duties); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 913 (7th Cir.1996) ("[H]aving a helper do most if not all of the duties the position entails" is an "extraordinary" accommodation, not a reasonable one.)

Although the Tenth Circuit has not expressly addressed this issue in a published opinion, it has held in at least two unpublished opinions that an employer is not required under the ADA to have another

supported student's breach of contract claim premised on pre-enrollment promises to accommodate disability).

**10.** This is the only accommodation suggested by plaintiff. While defendant's papers also suggest that plaintiff could not be reassigned to another position in the district, plaintiff makes no such request or argument in her papers or in the pretrial order. Thus, the court need not address defendant's arguments regarding the possible reassignment of plaintiff. *See Taylor v. Pepsi–Cola Co.,* 196 F.3d

1106 (10th Cir.1999) (plaintiff must specifically request accommodation by reassignment and demonstrate that he or she was qualified to perform the vacant job) (citing *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1179 (10th Cir.1999) (en banc)).

**11.** Again, plaintiff simply maintains that the issue here is not the reasonableness of hiring a full-time assistant for plaintiff, but whether defendant provided plaintiff with the accommodations it promised to provide and that it admits were reasonable.

employee assist a disabled employee in order to enable that employee to perform his or her job. *See Merrell v. ICEE–USA Corp.,* 2000 WL 1854117, at *3, 5, 242 F.3d 389 (10th Cir.2000) (district court correctly concluded on summary judgment that the only accommodation which would enable plaintiff to perform his job would require a second employee to accompany him on most service calls and that this accommodation was not reasonable); *Deal v. Candid Color Systems,* 1998 WL 381036, at *3, 153 F.3d 726 (10th Cir.1998) (requiring second employee to be scheduled to cover plaintiff's duties at all times is a burdensome accommodation not required by the ADA).[12]

Moreover, in its published decisions, the Tenth Circuit has recognized that "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job," *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995), and that an employer is not required to reassign the essential functions of a job to another employee in order to accommodate a disabled employee. *Frazier v. Simmons,* 254 F.3d 1247, 1261 (10th Cir.2001). Similarly, the Circuit has held that an accommodation that would result in other employees having to work harder is not required. *Milton,* 53 F.3d at 1124 (citing 29 § C.F.R. 1630.2(p)(2)(v) (impact to other employees is a relevant factor in determining the reasonableness of an accommodation)).

Based on the above authorities, the court believes that the Circuit, if faced with the issue presented here, would conclude that defendant need not hire a full-time paraprofessional to be available to assist plaintiff at all times during the school day. For the foregoing reasons, the court concludes that plaintiff has failed to show that she could perform the essential functions of her position with reasonable accommodation and, thus, she has failed to establish a prima facie case of failure-to-accommodate under the ADA. Summary judgment in favor of defendant is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 64) is **granted** and plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

---

**12.** The *Deal* decision is also interesting in that it refutes plaintiff's argument that the "full-time assistant" cases are distinguishable from plaintiff's case because her assistant would be permitted to help others when plaintiff did not need assistance. In other words, plaintiff claims that she does not require someone to be assigned exclusively to her. As recognized in *Deal,* however, defendant would still be required, under plaintiff's proposal, to have a full-time paraprofessional "on call" and available to assist plaintiff at all times should plaintiff need assistance. Thus, the mere fact that this paraprofessional might be able to help others on those apparently rare occasions when he or she was not helping plaintiff, it does not reduce defendant's burden to any degree.